## Thomas Aikin, Executor, etc., of John Aikin Deceased, v. Elizabeth Weckerly.

*Charge to Jury.* A charge to a jury should be expressed in such terms as will practically answer the object to be attained. It should be as direct, distinct and explicit as the circumstances will permit; [and as far as practicable in popular language; and it will be much less liable to misapprehension, and less difficult of application to the facts, when submitted complete and entire, upon all points requiring notice, than when made to consist of a series of isolated propositions of opposing counsel.

*Evidence in testamentary cases; Degree of proof: Burden of proof: Quality of proof.* There is no special rule as to the amount of proof necessary to establish an affirmative in testamentary cases; a preponderance of proof is required. A request to charge—that if the jury found a fair balance of testimony in favor of the validity of the will they should find for the proponent—was entitled to consideration. It would, if given, have been in effect equivalent to an instruction that they must rest their verdict upon a preponderance of proof. To refuse such a request absolutely, without any instruction upon that point, would leave the jury to imply that they were not authorized to find the will well executed upon a balance of testimony supporting it; and therefore such refusal would be error.

The burden of establishing the capacity to make a will is upon the proponent; he must aver it,—*Beaubien v. Cicotte, 8 Mich., 9,*—and support it in the first instance, by some other evidence than the presumption of soundness of mind which the law concedes to parties to contracts,—Cooley J. in *Taff v. Hosmer, 14 Mich., 314-5 ;*—and this burden—of establishing testamentary capacity— remains with the proponent to the end of the trial. He must produce evidence sufficient to outweigh that opposed; the whole of which, whether presumptive or offered by either party, is for the consideration of the jury.

A charge to the jury that "All persons are in law either of sound mind or unsound mind. If the testator was not of sound mind, the law treats him as of unsound mind, and the testator is to be compared with himself and not with others in determining whether he was of sound mind or not; "—and—" That to make the testator competent, he must have sufficient active memory to recollect in his mind, without prompting the elements of the business to be transacted, and to hold them in his mind a sufficient length of time to perceive their obvious relations to each other, and to be able to form a rational judgment in regard to them, and that it is not sufficient in law that the testator be of memory when he makes his will to answer familiar and usual questions: " *Held,*—to be unobjectionable, and quite as favorable to testamentary capacity as

the passage on that subject in *Beaubien v. Cicotte*, *12 Mich.*, *459*, which is approved.

*Will : Execution : Attestation in testator's presence.* The condition and position of the testator when his will is attested, in reference to the act of signing by the witnesses, and their locality when signing must be such that he has knowledge of what is going forward, and is mentally observant of the specific act is progress and,—unless he is blind,—the signing of the witnesses must occur where the testator, as he is then circumstanced, may see them sign, if he choose to do so.

*Heard October 26.    Decided January 5.*

Error to St. Joseph Circuit.

This case was brought into the Circuit Court of the county of St. Joseph by appeal from the Probate Court allowing the last will of John Aikin. An issue having been directed to try the validity of the will, Thomas Aikin, the executor and appellee, declared and "averred that heretofore, to wit, on the 9th day of July, A. D., 1866, at the township of Sturgis, in the said county of St. Joseph, John Aikin, then being of full age and sound mind, did then and there make his last will and testament in writing, and signed by the testator, and attested and subscribed in the presence of the testator by two or more competent witnesses. That the said John Aikin died at Sturgis, in said county, on the 14th day of July, 1866, and that said will was duly admitted to probate on the 12th day of September, 1866." To which Elizabeth Weckerly, the contestant and appellant, pleaded the general issue in the statutory form.

The issue between the parties was tried by a jury; and the plaintiff, to prove the issue on his part, offered as a witness David Page, who testified: "I knew John Aikin in his lifetime. [A paper purporting to be the last will and testament of John Aikin, being shown to him, he testified,—] the signature to this paper is the signature of John Aikin, not as he sometimes would have written it; I signed it as a witness at the request of Mr. Aikin; Mr. Aikin was lying on his bed in his bedroom when he signed it; I helped support him;

we then went into the room adjoining and sat down at a centre table and signed it as witnesses; I could see the testator's face when I signed it; the bed stood in front of the bedroom door; the testator's head was at the south; I have caused a diagram to be made showing the rooms and the position of the bed and the table. [The diagram was admitted in evidence and a copy of it is annexed to the record. The lines marked upon it, showing the range of the testator's vision through the open door, include the whole of the table at which the witnesses sat, the whole of one of the chairs, and all but a portion of the back of the other.] Mr. Flanders wrote the attestation clause; I signed it; Mr. Aikin had signed the will, and declared it to be his last will and testament; the testator requested Mr. Daniel Chamberlain and John Henry to sign as witnesses; this was the 9th day of July, 1866; testator died on the 14th day of July, 1866." On cross examination he testified "I had known the testator about thirty years; I went there at the request of testator; when I went there the testator was in bed; he was lying on his back; could turn his head from one side to the other; I saw Mr. Flanders getting papers of Mrs. Aikin, when the will was brought in and read; was there when the will was signed; Mr. Henry held Mr. Aikin up, and Mr. Flanders held his hand; Mr. Flanders then asked Mr. Aikin who he would have sign it as witnesses; he said myself, Daniel Chamberlain and John Henry; Mr. Aikin could see me at the time I signed it. I stood by Mr. Flanders when he was writing the attestation clause; I thought the testator was looking to see what he was doing; I could see him; the room was about 16 by 16 feet; I do not know whether he, Mr. Aikin, did see the will and table or not.

Daniel Chamberlain testified: "I have known John Aikin for twenty years; I saw him sign this will; Mr. Flanders, Mr. Page, Mr. Henry and I were present; I signed af-

ter Mr. Flanders wrote the attestation clause; Mr. Aikin said it was his last will and testament; when I signed it I could see Mr. Aikin's bed and his face plainly; the testator was of sound mind and memory when he signed this will; I do not know that I could swear that Mr. Aikin saw the will; his mind was all right; I understood he had the palsy; he told me he was having his will made; Mr. Henry held him up, and Mr. Flanders had hold of his wrist, when he signed the will; I think this a good representation of Mr. Aikin under his condition; Mr. Aikin was lying on his back at the time his will was executed; I do not know that I saw him lying in any other position; Mr. Aikin said he wanted Deacon Page, John Henry and myself to sign the will as witnesses; Mr. Flanders asked Mr. Aikin who he was to have for witnesses." On cross-examination he testified: "The testator lying on his back could see the paper when it was signed by the witnesses; I stood by him and could see the paper on the table; he was looking at Mr. Flanders when he wrote the attestation clause; when Mr. Aikin signed the will Henry sat behind him; I signed as witness at testator's request; he was not stupid at the time; Flanders asked him who he would have for witnesses; he said Page, Henry and myself."

The will was now offered in evidence. It was attested in the usual form by "David Page, Sturgis, Mich., Daniel Chamberlain, Sturgis, Mich., and John Henry, Sturgis, Mich."

The plaintiff then called John Henry, who testified: "The signature of John Henry as a witness to the will is mine; Mr. Flanders and Mr. Page were in the same room; do not know whether Chamberlain was present or not; John Aikin was held up in the bed when the signature was made; Mr. Flanders put the pen in his hand, and I steadied his elbow; he had no use of his right hand; Mr.

Flanders held the pen in his hand; I think he could not move his right foot, arm or fingers; I do not know who made the signature; I did not; I went to Mr. Aikin's on Sunday evening before the will was made, to take care of Mr. Aikin." On cross-examination he testified: "I went there on Tuesday and staid until Saturday; he died the following week; I think the will was executed on Tuesday; I saw him on the 4th of July; he was a very sick man; he seemed to be troubled in mind; saw him Sunday; he had a stroke the night before; I spoke to him; he made me no answer, but looked at me; according to the date of the will, it shows execution on Monday; it was executed on Tuesday; I did not consider him sound in mind; I was present at the execution of the will; I was still taking care of him; Flanders came in with a paper in his hand; I did not hear the will read; Mr. Flanders said Mr. Aikin wanted to sign this paper; nothing said as to what the paper was; Mr. Flanders asked me to sign; I signed the paper as a witness in the sitting room; Aikin was lying on his back; I could not see witnesses when they signed the will, nor could Aikin see them; I sat on the side of the bed when the signing was done; Aikin was not of sound mind when the will was executed, nor had he been from the time when I went there on the previous Sunday; when I signed the paper I sat on the east side of the table; Aikin kept making inquiries about going home; seemed deranged; I heard the will read by Mr. Flanders to testator before signing."

J. W. Flanders testified: "I am one of the counsel for the plaintiff; I was acquainted with John Aikin for fifteen or sixteen years before his death, and was frequently called upon to do legal business for him; on the day the will was dated Thomas Aikin came for me; I went to the residence of the testator with him and Mr. Page; Mr. Aikin told me he wanted me to draw his will, and gave me some verbal instructions; he told me how he wanted to divide

his property, but said nothing about Elizabeth Weckerly; I drew up the will; when I read it to him he said: 'That is not as I wanted it. I have always said that Elizabeth Weckerly should not have any of my property. I will not sign it as it reads.' I then made the erasures and interlineations as he directed, and read it to him, and he said it was right; I then told him it was ready for his signature; he asked Mr. Page to sign it for him; I told him he had better sign it himself if he could ; he answered, 'then you must assist me;' I steadied his hand while he wrote his name."

Other witnesses were examined who testified to the mental capacity and the physical condition of the testator; and to the position of the witnesses when attesting the will.

The evidence being closed, the counsel for the plaintiff requested the Court to charge the jury:

1. " That it was not necessary that the testator should write his entire name. If the signature to the will was made by another person guiding his hand with his consent, it would be sufficient.

2. " That if the testator knew that this was his last will and testament, and designed it as such, then that this would be a sufficient publication.

3. " That under the statute it is not necessary, to the valid execution of the will; that the witnesses should actually see the testator sign his name.

4. " That it was necessary, to the valid execution of this will, that it should be attested and subscribed in the presence of the testator by two or more competent witnesses, but to constitute this presence, it is not necessary that the testator shall be in the same room or apartment; that if the situation and circumstances of the parties were such that the testator in his actual position might have seen the act of attestation and subscribing, it was enough, although the attesting witnesses were not in the same room or apartment.

5. " If the jury find from the evidence that the testator, John Aikin, signed the will in his bedroom, on his bed, and that the witnesses went through an open door into an adjoining room, and there subscribed their names at a table standing opposite to said open door, and that the said testator might have seen them subscribe their names if he would, then that such attestation and subscribing was, in contemplation of law, in his presence, and was sufficient.

6. " That it is not necessary to prove that the testator actually did see the attesting witnesses subscribe their names to the will, if the same was done in his presence and where he might have seen them subscribe their names if he would.

7. " If the jury find from the evidence that the testator, John Aikin, at the time he executed this will, intended of his own free will to 'make such a disposition of his property, and that he was capable of knowing what he was doing, and of understanding to whom he gave his property, and in what proportions, and whom he was depriving of it, as heirs or devisees, under the will he revoked, if any, then the jury are not at liberty to presume such will invalid.

8. " That mere weakness of mind or occasional flightiness or wandering of intellect during sickness, if such they found the fact to be, would not disqualify the testator, John Aikin, to make a valid will, provided that such testator had reason and understanding sufficient to comprehend the act.

9. " If the jury find that the testator, John Aikin, at the time he executed this will, talked rationally in relation to subjects requiring thought, judgment and discretion, then, that such facts would be evidence of a capacity to make a will.

10. " That if the jury find from the evidence that the testator has frequently before the making of this will ex-

pressed his intention to dispose of his property in the manner provided in this will, then, that such fact is competent evidence for the jury to consider as tending· to show that such will was made in accordance with the free and unbiassed purpose and intention of the testator.

11. " That a testator has a legal right to disinherit any one or all of his children upon any ground satisfactory to himself.

12. " That the subsequent declarations of the testator, tending to show that he understood the nature of the provisions of his will, and felt satisfied therewith,—if the jury find that such declarations were made by him,—is competent evidence, and may be taken into consideration by the jury.

14. " That if·the jury find from the evidence that the mind of the testator, John Aikin, was weakened or impaired by sickness or disease when he made the will, then, that such fact would not incapacitate him to make a valid will, provided he intended of his own free will to make such a disposition, and was capable of knowing what he was doing, and of understanding to whom he gave his property, and in what proportions, and whom he was depriving of it as heirs or devisees under the will he revoked, if any,"— each of which said requests was granted, the Court so charged the jury, and the defendant excepted.

The counsel for the plaintiff further requested the Court to·charge the jury:

13. " That if the jury find that there is a fair balance of testimony in favor of the validity of the will, then that they should find a verdict in favor of the propounder thereof,"— which request was refused by the Court, and the plaintiff then and there excepted.

The Circuit Judge further charged the jury:

1. " That the burden of proving all the conditions to a valid will rests upon the persons offering the will for

probate, and such burden continues with the propounder throughout the case.

2. "It must be shown by the propounder that the will was signed by the witnesses in the presence of the testator. It will not be sufficient that he was in sight of them. It must be done where he himself could see them in the act of signing.

3. "If the testator was unable, either from any position, obstruction, or from his own physical condition, to see the paper at the time of signing by the witnesses, so as to identify the paper they were signing, then the attestation was not a valid one, and the will was not valid.

4. "If the jury find that the testator did not in fact see the witnesses attest the instrument, the statutory requirements would not be complied with, although the facts prove a possibility of his seeing the witnesses subscribe their names.

5. "The statute requires that the testator, at the time he makes his will, should be of sound mind.

6. "All persons are, in law, either of sound mind or of unsound mind. If the testator was not of sound mind, the law treats him as of unsound mind, and the testator is to be compared with himself and not with others in determining whether, he was of sound mind or not.

7. "That in order to constitute sufficient mental capacity, the testator must be capable of knowing and understanding the nature of the business he was then engaged in, and the elements of which the will is composed, and the disposition of his property therein provided for, both as to the property he meant to dispose of by his will and the persons to whom he meant to convey it, and the manner in which it was to be distributed between them.

8. "That to make the testator competent, he must have sufficient active memory to recollect in his mind, without prompting, the elements of the business to be transacted, and to hold them in his mind a sufficient length of time to

perceive their obvious relations to each other, and to be able to form a rational judgment in regard to them, and that it is not sufficient in law that the testator be of memory, when he makes his will to answer familiar and usual questions.

9. " If the jury find that from the distance of the witnesses from the testator, or from any other reason the testator did not and could not see what the attestating witnesses wrote upon the paper purporting to be his will, such attestation would not be valid.

10. " If therefore the jury find that the instrument now produced, and claimed to be the will of John Aikin, was taken from his immediate presence into an adjoining room where he could not see the witnesses sign their names to it, it is not sufficient to pass his estate."

To each of which opinions and decisions of the Circuit Judge, so delivered to the jury, the counsel for the proponent excepted.

The jury rendered a verdict in favor of the defendant and against the plaintiff : " That the will propounded is not the last will and testament of John Aikin, deceased," and the judgment entered on the verdict is brought into this Court by writ of error.

In this Court the errors assigned are :

1. That the Court below erred in refusing to charge the jury as requested by counsel for the plaintiff in the Court below : " That if the jury find that there is a fair balance of testimony in favor of the validity of the will, then, that they should bring a verdict in favor of the propounder thereof."

2. That the said Court erred in charging the jury : " That the burden of proving all the conditions to a valid will rests upon the person offering the will for probate, and such burden continues with the propounder throughout the case."

3. That the said Court erred in charging the jury :

" It must be shown by the propounder that the will was signed by the witnesses in presence of the testator ; it will not be sufficient that he was in sight of them ; it must be done where he himself could see them in the act of signing."

4. That the said Court erred in charging the jury : " If the testator was unable, either from any position, obstruction, or from his own physical condition, to see the paper at the time of signing by the witnesses, so as to identify the paper they were signing, then the attestation was not a valid one, and the will is not valid."

5. That the said Court erred in charging the jury : " If the jury find from the evidence that the testator did not in fact see the witnesses attest the instrument, the statutory requirements would not be complied with, although the facts prove a possibility of his seeing the witnesses subscribe their names."

6. That the said Court erred in charging the jury : " All persons are in law either of sound mind or of unsound mind. If the testator was not of sound mind, the law treats him as of unsound mind, and the testator is to be compared with himself and not with others in determining whether he was of sound mind or not."

7. That the said Court erred in charging the jury : " That to make the testator competent he must have sufficient active memory to recollect in his mind, without prompting, the elements of the business to be transacted, and to hold them in his mind a sufficient length of time to perceive their obvious relations to each other, and to be able to form a rational judgment in regard to them, and that it is not sufficient in law that the testator be of memory, when he makes his will, to answer familiar and usual questions."

8. That the said Court erred in charging the jury : " If the jury find that from the distance of the witnesses from the testator, or from any other reason the testator did not and could not see what the attestating witnesses wrote

upon the paper purporting to be his will, such attestation would not be valid."

9. That the said Court erred in charging the jury : " If therefore the jury find that the instrument now produced and claimed to be the last will of John Aikin, was taken from his immediate presence into an adjoining room where he could not see the witnesses sign their names to it, it is- not sufficient to pass his estate."

*J. W. Flanders* and *Wm. L. Stoughton* for plaintiff in error.

1.  The first Assignment of Error is based upon the refusal of the Court to charge the jury: " That if the jury find that there is a fair balance of testimony in favor of the validity of the will, then that they should bring a verdict in favor of the propounder thereof."

In criminal cases the evidence must be so clear and conclusive as to exclude all reasonable doubts; but in all cases of a civil nature, where no presumption of law or *prima facie* right controls, a preponderance of evidence is sufficient to turn the scale.—*1 Starkie on Ev., 451.*—The proponent of a contested will is entitled to prevail, if there is a fair balance of testimony in favor of the validity of the will.—*Thornton v. Thornton, 39 Vt. 122 ; Am. Law Reg. 1867—341-6 ; Dean v. Dean, 27 Vt. 750.*

2.  The second Assignment of Error is based upon the charge of the Court: " That the burden of proving all the conditions to a valid will rests upon the person offering the will for probate, and such burden continues with the propounder throughout the case."

It is settled in this State at least, that where the issue is as to the competency of the testator, the proponent of the will is not required, at the outset to make more than a *prima facie* showing. —*Taff v. Hosmer, 14 Mich., 309.* In this case the Court seems to clearly recognize the fact that the party alleging the incapacity of the testator is required to

assume the burden of the proof and to " establish an affirmative case."—*Ibid.*, *318.*    The language of the Court in *Beaubien v. Cicotte*, sustains so far as any opinion is expressed, the same view.—*8 Mich.*, *13.*    Every person is presumed to be of perfect mind and memory unless the contrary be proved.—*Swinb.*, *45* ; *Jackson v. Van Dosen*, 5 J. R. *144-158* ; *Brooks v. Barrett*, 7 Pick. *94* ; *Redfield on Wills*, *(2d Ed.)* *46.*

The statute requiring the testator to be of sound mind (2 C. L., *863*) does not destroy this presumption ; and according to the ruling in *Taff v. Hosmer*, it is complied with when the proponent offers *prima facie* evidence of mental soundness.    The same rule obtains in Massachusetts, where the statute is precisely like our own.—*Redfield on Wills*, *40 and 43.*    Where insanity, or other unsoundness of mind is set up to defeat a will, the burden of proving it ought according to principle and analogy, to rest with the party who claims the benefit of the fact when established.    Al though there is some conflict in the decisions of the English and American courts, it is believed that the weight of authority fully sustains this proposition.—*Redfield on Wills*, *30-50* ; *Tuckner v. Phipps*, *3* Atk. *361* ; Atl'y. Gen. v. *Parnther*, *3* Brown's *C. C. 443* ; *White v. Wilson*, *13* Vesey, *87* ; *Allen v. Pub. Admr.*, 1 Brad. Sur. Rep. *378* ; *Saxton v. Whiterker*, *30* Ala. *237* ; *Trumbull v. Gibbons*, *2* Zabr. *117* ; *Griffin v. Griffin*, R. M. Charleton, *217* ; *Brown v. Barrett*, 7 Pick. *94* ; *Jackson v. King*, *4* Cow. *207* ; *Sloan v. Maxwell*, *2* Green Ch. *580* ; *Chandler v. Ferris*, 1 Harrington, *454-461* ; *Werstler v. Custer*, *46* Pa. St. *502* ; *Baxter v. Abbott*, 7 Gray, *71.*

3.    The 3d, 4th, 5th, 8th and 9th Assignments of Error relate to the arbitrary rules laid down by the Court as to what was necessary to constitute an attestation of the will in the presence of the testator.

It is insisted on the part of the plaintiff in error, that these instructions are contrary to the spirit and reason of

the law and the whole tenor of the authorities.  The stat-
ute requires that a will shall be " attested and subscribed
in the presence of two or more competent witnesses. "—*2
Comp. Laws, Sec. 2,829*.  This was the rule under the
statute of frauds, and the same provision is contained in
the present English and most of the American statutes.  It
is fully complied with when the testator is corporeally pres-
ent, and conscious of the act performed before him.  To
be corporeally present, it is not indispensable that the tes-
tator and witnesses should be in the same room or even in
the same house, or that the testator should actually see the
act of attestation.    If the attestation be within the scope
of his view from his actual position, it will be sufficient.—
*2 Greenl. Ev. § 678; Redfield on Wills, 244–251; Shires v.
Glascock, 2 Salk.  688; 1 Ld. Raym. 507; Davey v.
Smith, 3 Salk. 395; Todd v. E. of Winchelsea, 2 C. & P.
488; 3 Russ. 441; Russell v. Falls, 3 Har. & McHen.
463; Doe v. Manifold, 1 M. & S. 294; Watson v. Pipes,
32 Miss. 451; Hill v. Barge, 12 Ala. 687; Lamb v. Girt-
man, 26 Geo. 625; Mason v. Harrison, 5 Har. & J. 480;
Dewey v. Dewey, 1 Met. 349; Wright v. Lewis, 5 Rich.
212; Ruddon v. McDonald, 1 Redf. Sur. R. 352.*

4.  The 6th and 7th Assignments of Error are based
upon the 6th and 8th charges.

The direct, if not necessary, tendency of these charges
was to mislead the jury.    The seventh charge implies that
the testator must have his utmost vigor of mind as com-
pared with himself.  And when construed with reference
to the evidence in the case, it very clearly appears that
the jury must have so understood it.    It is well settled
that mere weakness of mind or occasional flightiness or
wandering of intellect during sickness will not disqualify
one to make a will, provided he have reason and under-
standing sufficient to understand the act.—*Redfield on
Wills, 105 and 123–130; Converse v. Converse, 21 Vt. 168;*

*Horn v. Horn,* 9 Ired. 99; *McMasten v. Blair,* 29 *Penn. St.* 149; *McClintock v. Curd.,* 32 *Mo.* 411; *Snow v. Benton,* 28 *Ill.* 306; *Beaubien v. Cicotte,* 12 *Mich.* 490; *Stewart v. Lispenard,* 26 *Wend.* 254; *Delafield v. Parish,* 25 *N. Y.* 9.

In the case at bar the jury were instructed that the testator must be able to "form a rational judgment," leaving them to decide the case according to their views, as to whether the act in question was rational or not.

*H. H. Riley* and *H. F. Severens,* for defendant in error.

I. The counsel for the plaintiff requested the Court to charge the jury, that if they found there was a "fair balance" of testimony in favor of the validity of the will, then that they should bring in a verdict in favor of the propounder thereof.

This was properly refused for several reasons: 1. It is not a "*fair balance*" but a *preponderance,* which the law requires in civil cases generally; and, 2. It is a preponderance of *proof* and not of the instruments by which it is produced, that is to be regarded. 3. It seems very doubtful whether the ordinary rule governing civil actions, in regard to the burden of proof, applies to this class of proceedings. The best considered cases seem to hold that it does not, and that something more is required than mere preponderance.—*Delafield v. Parish,* 25 *N. Y.,* 9, 35, and cases there cited, especially: *Panton v. Williams,* 2 *Curt.* 530. But, however that may be, the granting of the request could hardly fail to mislead the jury, for the reasons above given, and when the charge would be liable to do this, it is properly denied.

II. The charge of the Court as to the burden of proof was entirely correct. The burden rests upon the proponent at all the stages of the case. Whether there may be pre-

sumptions which assist him in sustaining that burden or not, is another question upon which the authorities are not agreed. But upon the main proposition there seems to be no doubt that the general burden rests upon the proponent —*1 Red. on Wills*, (*1st Ed.*), *30 par. 1, 39, par. 12 ; Delafield v. Parish, 25 N. Y. 9, 34 ; Crowninshield v. Crowninshield, 2 Gray, 524 ; Beaubien v. Cicotte, 8 Mich. 9 ; Taff v. Hosmer, 14 Mich. 309.*

III. The third assignment of error is to a charge of the Court that the attestation must take place where the *testator* could see the witnesses. This is in accordance with the express requirement of the Statute, which requires the attestation to be done in his presence, and was no more than the propounder conceded in his fourth request to charge.—*Graham v. Graham, 10 Iredell, 219 ; Reynolds v. Reynolds, 1 Speers, 253 ; Brooks v. Duffield, 23 Ga. 441 ; Reed v. Roberts, 26 Ga. 294 ; Eddlestone v. Speake, 1 Show. 89 ; Broderick v. Broderick, 1 P. Wms. 239.*

IV. The jury were properly charged that the attestation was not sufficient if the testator could not see the paper when the witnesses signed it, so as to be able to identify it as his will.—*1 Jar. on Wills, 2d Ed., 118, 121, 82 ; Tribe v. Tribe, 1 Rob. 775 ; Todd v. Winchelsea, 2 Carr & P. 483 ; Winchelsea v. Wauchope, 3 Russell, 443 ; Neil v. Neil, 1 Leigh, 6.* An attestation not made in the room is *prima facie* attestation not in the testator's presence.—*Neil v. Neil, 1 Leigh, 6 ; Elder v. Hardy, 7 Har. & Johns, 61 ; 1 Greenl. Ev. 272.*

The same observations may also be made respecting the 8th and 9th assignments of error as to the 3d and 4th.

V. The Court charged that a *possibility* of seeing the witness attest would not be sufficient.

Whatever view may be taken of the meaning of the statutory requirement, that the attestation must be in the presence of the testator—that is, whether it involved something more than mere bodily presence, and includes also

19MICH.—K³.

mental attention to the act, which, from the reason and policy of the statute, would seem the true construction, as is explicitly held in some of the States.—*1 Red. on Wills, 249;* *Dewey v. Dewey, 1 Metcalf, 349.*

Yet when taken in connection with what the Court charged in response to the requests of the proponent—see the 4th, 5th and 6th requests of proponent, page 20 of the record—*Jackman v. Barker, 4 Metcalf, 235*—it was right and was properly charged. For the existence of a possibility of the testator's seeing the witness sign by exertions which he might make, but which in his situation would be attended with such pain and difficulty as would be likely to deter him therefrom, is in no just sense a compliance with the rule. It can make no difference whether the perception of the act is obstructed by partitions of artificial structure which the testator might, by effort, have removed or avoided by change of position—or by imprisonment in the organism of a helpless body. And this has been so held in analagous cases.—*Jones v. Tuck, 3 Jones (Law), 202;* *Russell v. Fall, 3 Harr. & McHen. 463.*

That the courts proceed upon a somewhat strict construction of the statute and require a full and *substantial* com pliance with all the statutory requirements,—See *Rutherford v. Rutherford, 1 Den. 83; Brinkerhoff v. Rumsen, 8 Paige, 488; Chaffee v. Baptist Missionary Con., 10 Paige, 85.*

VI. The propositions contained in the 6th assignment would seem almost like truisms. Certainly there is no middle ground between sanity and insanity which the law recognizes in the inquiry into the validity of wills. So the proposition that the sanity of the testator's mind at the time of signing, in a case where the question is whether insanity is produced by disease, it is manifestly proper that his condition should be judged with reference to his character and temperament when in health, and with mental faculties unquestionably sound.—*Delafield v. Parish, 25 N.*

*Y. 9; 1 Red. on Wills, 67 note 2, and Ray on Insanity,* §*128, there cited.*

VII. The measure of competency given by the Court to the jury as essential to testamentary capacity, is that which the most thoroughly considered cases all concur in.—*Beaubien v. Cicotte, 12 Mich. 459 ; Delafield v. Parish, 25 N. Y. 9, 29; Converse v. Converse, 21 Vt. 168 ; Redfield on Wills, 123, par. 5, and 130, par. 16.*

VIII. With respect to the 3d, 4th, 5th, 8th and 9th assignments or error, it may be said of them generally, that the propositions covered by them are in substance conceded by the requests to charge presented by the counsel for the proponent and granted by the Court. They simply brought forward in affirmative shape the matter imbedded in the requests of the other side, and are the proper complement of them. A review of the requests of both sides, granted by the Court, will show that the proponent was not prejudiced.

GRAVES J.

This was an appeal from an order of the Judge of Probate, which determined that the instrument mentioned in the record as the last will and testament of John Aikin, deceased, had been duly proved and established. After the appeal, an issue was regularly framed in the Circuit and tried there before a jury, who found that the instrument in question was not the last will and testament of John Aikin. Upon this trial the proponent, Thomas Aikin, excepted to several decisions of the Court in charging and refusing to charge, and these exceptions are now before us upon writ of error.

The plaintiff in error who propounded the supposed will for probate, requested an instruction to the jury that if they found a fair balance of testimony in favor of the validity of the will, they should then find a verdict for pro-

ponent, but the Court refused so to charge and the first assignment of error is based on this ruling. As it does not appear that the Court gave any instructions relating to the point noticed by the request, the question raised by the refusal to accede to it, is vitally important.

The jury were not merely left without any guide from the Court, on a point upon which the verdict might turn, but were left to imply, that a finding that the will was well executed, would not be authorized upon a balance of testimony supporting that view.

The reasoning by which this ruling of the Court is sought to be maintained is ingenious, but is thought to be too refined for its object.

It is urged for defendant in error that it is not a "fair balance," but a "preponderance," which the law requires generally in civil cases, and even then, that the "preponderance" must be of "proof" and not of the "instruments" of evidence.

It would undoubtedly have been more in accordance with the practice in this State, and more in consonance with the niceties of law language to have worded the request in the manner indicated by the reasoning of contestant's counsel, but it is questionable if a charge in that form would have been more useful to the jury, than in that stated by proponent's counsel. The shape of the request appears to have followed the language of the Supreme Court of Vermont in a recent case, and we think if the jury had been charged according to it, they would have received it as meaning precisely the same thing, which contestant's counsel admit would have been proper.

When jurors are to be instructed on points of law, it is the plain duty of the judge to use such terms as will practically answer the object to be attained.

The purpose is to convey to the minds of the jurors such legal knowledge as the case requires, and to that end

the charge should be conceived in terms as direct, distinct, and explicit as the circumstances will permit, and as far as practicable in popular language. And in this connection we deem it proper to observe, that the charge will be less open to misapprehension and less difficult of application to the facts, when it is submitted complete and entire upon all the legal points in the case requiring the Judge's notice, than when it is broken into fragments and made to consist of a series of isolated propositions of opposing counsel.

If the instruction given or asked for is clear, if it could not mislead those without the walks of the profession who act as jurors, but would be readily understood by them in that sense which would make it correct, the circumstance that a subtle criticism, though technically just, should find flaws in it, ought not in a court of review to derogate from its propriety. Whether a failure to give any instruction upon a matter requiring it and where one was asked, can be defended on the ground that the terms of the request were not technically accurate in the highest sense, though manifesting clearly to the Court the nature of the instruction prayed for,—is a question we do not consider.

The counsel for contestant further observed on this branch of the case, that it seemed doubtful whether the law did not require something more than a preponderance of evidence to justify a verdict for proponent.

We think, however, that analogy, practice and direct authority fairly overrule any speculative doubt of this kind.

Between the rule which has always obtained in ordinary civil actions, and that universally applied in trials for crime, no middle course sufficiently definite and practical to be recognized and adopted seems to have been discovered. But if an intermediate line could readily be drawn, we do not perceive how the ends of justice would be advanced by it in these testamentary cases. It is true that

judges in speaking of the degree of truth advanced or needed on particular occasions, have sometimes used qualifying words not found in an exact statement of either of the rules just mentioned, but this has been done generally, if not always, either to mark a proposition with judicial emphasis, or denote the amount of evidence given or required in cases of discretion. Instances of this description, however numerous, would not suffice to settle as a principle, that testamentary issues should be resolved by a rule lying somewhere between those respectively applying to civil and criminal proceedings.

An exception was taken to that portion of the charge, which advised the jury that the burden of proof was upon the proponent and continued with him throughout the case.

This objection appears to have been raised on the theory that the proponent was bound in the first place to make a *prima facie* case in favor of the testator's competency, that the ordinary common law presumption in favor of competency afforded sufficient evidence for that purpose, and that thereupon the contestant assumed the burden of proof and was bound to show the testator's disability.

The inquiry out of which the question arose related to the sufficiency of the testator's understanding to make the will; and the result of that inquiry may have turned on the decision of the point presented. It is seen that the ground really occupied by proponent, is that the presumption of testamentary capacity supplies all the evidence on that subject which the law requires, unless such counter proof is offered as will overcome this presumption, and that even in cases where a contestant introduces opposing evidence on the issue of testamentary ability, the law casts upon him the burden of showing incapacity by some amount of proof not less than a preponderance.

This view necessarily assumes, that without further proof than is supplied by this presumption, the finding should

be in favor of competency in all cases where the probate is unopposed, and in all contested cases, where no evidence is given by contestant on the point of testamentary ability or where the opposing evidence submitted on that subject, will no more than balance the presumption.

This position is believed to be untenable. This Court decided in *Beaubien v. Cicotte, 8 Mich., 9;* that the propo- nent of a testamentary paper for probate, was required to aver the soundness of mind of the testator at the time of execution, and that the burden of proving the fact rested upon him, but it was not found necessary to decide in that case upon the effect of the common law presumption of sanity, as an item of evidence bearing on the averment of testamentary capacity; or its aptitude as evidence under the requirement to prove the averment.

The case of *Taff v. Hosmer, 14 Mich., 309,* however, not only affirms that proponent before resting is bound to make a *prima facie* case on the averment of soundness of mind, but is an authority that the necessity of making such a case on that point involves the production of some other evidence of testamentary capacity than is furnished by the legal presumption.

It is true that this last proposition is not explicitly laid down in *Taff v. Hosmer*, but the opinion of my brother Cooley noticed the fact, that proponents in that case before resting had submitted evidence in aid of the presumption of law, and treated the course so pursued as agreeable to usage and correct in principle.

In these testamentary cases, the burden of proving capa- city is not merely cast in the first instance upon those averring it, but it abides with them during the trial.

Undoubtedly the jury must consider and weigh the whole evidence bearing upon the point, whether presumptive or coming from one party or the other. But as those who propound the will for probate have the burden of proof, or

in other words, are bound to establish their averments by
a balance of proof in their favor, they will necessarily fail
before the jury, unless on the whole evidence such balance
is found. If it were otherwise, and the burden of proof
was devolved on contestants, the parties asserting testamen-
tary capacity would be entitled to a verdict, if the evidence
should be equally balanced, and hence the parties really
holding the affirmative would succeed, when in legal con-
templation the matter would remain as though no evidence
whatever had appeared.

The question throughout the trial is whether the testa-
tor was of sound mind? And the whole evidence appli-
cable to it belongs to the jury; but since proponents must
aver testamentary capacity, and support such averment by
a measure of evidence outweighing that opposed, they will
fail if the whole evidence on the subject, presumptive and
otherwise, supporting the averment is found to fall below
this measure of proof.

The assignments of error grounded on instructions
touching attestation may be considered together. They all
relate to the meaning of the statutory requirement, that
a will must be " attested and subscribed in the presence of
the testator," as applicable to the facts of this case. The
endeavor would be a vain one to cite and examine cases
bearing on this question. Many of them will be found col-
lected in the recent work of Mr. Redfield, on the law of wills,
and in other elementary books, and while they have hardly
sufficed to guide the text-writers to very precise results
upon some points, they seem to have led to pretty defi-
nite conclusions on others. Therefore, without attempting a
review and comparison of cases, it is deemed sufficient to
state, as concisely as possible, such of the propositions they
seem to support, as are called for by the circumstances of
the present proceeding.

The condition and position of the testator when his

will is attested and in reference to the act of signing by the witnesses, and their locality when signing, must be such that he has knowledge of what is going forward and is mentally observant of the specific act in progress, and, unless he is blind, the signing by the witnesses must occur where the testator, as he is circumstanced, may see them sign if he choose to do so.

If, in this state of things, some change in the testator's posture is requisite to bring the action of the witnesses within the scope of his vision, and such movement is not prevented by his physical infirmity, but is caused by an indisposition or indifference on his part to take visual notice of the proceeding, the act of witnessing is to be considered as done in his presence.

If, however, the testator's ability to see the witnesses subscribe is dependent upon his ability to make the requisite movement, then if his ailment so operates upon him as to prevent this movement, and on this account he does not see the witnesses subscribe, the will is not witnessed in his presence.

The instructions given to the jury on this subject, were not entirely harmonious; and one which appears to have been intended as quite emphatic, may have led the jury to suppose that the testator's visual perception of the signing by the witnesses was indispensable to a valid execution, even though his seeing was contingent upon some slight movement, which he omitted simply because he did not care to see, or although his failure to look at the witnesses when signing, proceeded from his own choice.

That portion of the charge which seems liable to this objection was in these words:—" If the jury find that the testator did not in fact see the witnesses attest the instrument, the statutory requirements would not be complied with, although the facts prove a possibility of his seeing the witnesses subscribe their names."

19 MICH —L³.

If the witnesses subscribed the will where the testator could see them do it by some slight movement of his head, or by turning and opening his eyes or the like, and, being able to make such change, omitted it because he had no desire to see, or was careless or indifferent about it, it was certainly "possible" for him to see the witnesses subscribe, and such a "possibility" of seeing would assuredly suffice to meet the "statutory requirements," if attended by the other conditions prescribed by law.

The 6th and 7th assignments of error complain of those portions of the charge which related to testamentary capacity, and. it is said that the instructions on that subject necessarily tended to mislead the jury.

It does not seem to us, however, that these instructions were open to that objection.

The charge on which the 6th assignment of error is based contained an elementary proposition quite proper in itself. In giving it, the Circuit Judge attempted no definition of soundness or unsoundness of mind, but reserved all advice on that subject for the instructions immediately following and those given on proponent's request. The purpose was to simplify the investigation by the jury, and give them some standard for measuring the capacity of the testator when he made the will; and in directing them, for this purpose, that the testator should be compared with himself and not with others, the Judge laid down the only practicable rule the case admitted.

The remaining instructions were intended to meet the facts which had been developed, and convey to the jury such information respecting testamentary capacity and the phenomena of mental unsoundness, as would enable them to compare the condition of the testator at the time of executing the will, with his condition at other times, and ultimately to enable them to ascertain whether he was competent or not.

Many of the instructions upon this subject were given on

the request of proponent's counsel and are not the subject of complaint here.

The frame of that portion of the charge objected to, conforms in substance to the view expressed by many eminent tribunals, and was quite as favorable to testamentary capacity as the passage on that subject in *Beaubien v. Cicotte, 12 Mich., 459,* with which we are satisfied.

The criticism of proponent's counsel on a single expression we think too subtle and far-fetched. It is quite improbable, if not impossible, that the jury should have taken the instruction in the sense which counsel suppose, and hence we cannot accede to the argument that the charge on that ground operated as a misdirection.

The order of the Circuit Court must be set aside with costs and a new trial ordered.

The other Justices concurred.