*In re* LANE'S ESTATE.

1. WILLS—EXECUTION.
    Probate of a will should be allowed where there is no claim of incompetency, fraud or undue influence and court is satisfied it
    was executed in compliance with the spirit of the law (3 Comp.
    Laws 1929, § 13482).

2. SAME—ATTESTATION—CONSTRUCTION OF STATUTE—PRESENCE.
    Statute requiring wills to be attested in the "presence" of testator should be construed according to the circumstances of
    each particular case, and the word "presence," not being a
    technical or scientific term, conveys the idea attached thereto
    according to the common use of language (3 Comp. Laws 1929,
    § 13482).

3. SAME—ATTESTATION—STATUTES.
    Will, executed by testator in presence of two witnesses who
    signed their names as witnesses on a desk in hospital corridor
    about 30 feet from his bed, returned to and examined by him,
    and he expressed satisfaction therewith, was properly attested
    although witnesses were temporarily out of his sight when they
    signed (3 Comp. Laws 1929, § 13482).

Appeal from Wayne; Lamb (Fred S.), J., presiding. Submitted October 10, 1933. (Docket No. 115, Calendar No. 36,730.) Decided December 19, 1933.

Cora Lane presented for probate the last will of Edward John Lane, deceased. Rosalie Berryman filed objections thereto. Will disallowed. Proponent appealed to circuit court. Judgment for proponent. Contestant appeals. Affirmed.

*John C. Shields* and *N. F. Crawford,* for appellant.

*Arthur A. Ude,* for appellee.

SHARPE, J. The question here presented is whether a written instrument, purporting to be the last will and testament of the deceased, was executed by him in a manner entitling it to probate. The probate judge held that it was not. On appeal to the circuit court and trial before the judge without a jury, this holding was reversed and the will admitted to probate. The contestant appeals.

In the opinion filed by the trial judge he said:

"From the proof submitted to this court, it appears that the instrument, purporting to be the last will and testament of Edward J. Lane, deceased, was executed by the testator while lying ill in one of the hospitals of the city of Detroit; that the instrument had been prepared by some one other than the testator; that on the 15th day of January, 1932, while lying in bed in one of the private rooms of the hospital, the testator signed the instrument as and for his last will and testament in presence of his attending physician, Dr. W. W. Babcock, and one of the nurses assigned to the case, Esther Eilber, and where they could see him sign his name thereto. Dr. W. W. Babcock and Esther Eilber, at testator's request, signed

their names to said instrument as witnesses; that there being no table or other convenience in testator's room to use for that purpose, they went to a table in the corridor of the hospital, some 30 feet from the bed where testator was lying, and temporarily out of his sight, and signed their names to said instrument as witnesses thereof; that the signing of the instrument by the testator and by the witnesses was one transaction and all in one setting; that no question is raised that the said instrument proffered for probate is not the instrument executed by the testator and signed by the witnesses, or that it does not express his desire in relation to the disposition of his property.''

It also appears in evidence that after the witnesses had signed the will it was shown to the testator with the names of the witnesses thereon; that he asked for his glasses and put them on, and expressed his satisfaction therewith.

There is little dispute about the facts in this case. The finding of the trial court presents the issue in the light most favorable to the contention of the contestants. A will executed in this State, to be effective, must ''be in writing and signed by the testator or by some person in his presence, and by his express direction, and attested and subscribed in the presence of the testator by two or more competent witnesses.'' 3 Comp. Laws 1929, § 13482.

The purpose of this requirement is to place the testator at the time of its execution in the presence of at least two disinterested persons and removed from the influence or solicitation of those interested and to prevent fraud or imposition upon him or the substitution of a surreptitious will. The purpose may also be said to be to require execution under circumstances which satisfy the court in which it is

offered for probate that it is in fact the last will and testament of the deceased.

In placing a construction upon the language of this statute, we must not lose sight of the fact that wills are frequently prepared by persons unfamiliar with its provisions and executed at times and under circumstances where the necessity of strict conformity is not apparent to the testator or the witnesses thereto. No claim of incompetency or fraud or undue influence is here made, and, if the court be satisfied by the proof submitted that the execution was in compliance with the spirit of the law, probate should be allowed.

The statute requires that it be attested and subscribed "in the presence of the testator." In Webster's New International Dictionary (1926 Ed.), "presence" is thus defined:

"Act, fact, or state of being present, or of being in a certain place and not elsewhere, or of being within sight or call, at hand, or in some place that is being thought of; attendance; —opposed to *absence;* as, the *presence* of troops saved the city.

"The part of space within one's ken, call, influence, etc.; immediate nearness or vicinity of one; proximity."

Some courts have placed a very strict construction upon the words "in the presence of," and have held that the testator must have an uninterrupted view of the witnesses when they sign (see notes in 38 L. R. A. [N. S.] 161, and in L. R. A. 1915B, 87), and others have held that the test of presence is whether the testator might have seen the attestation had he looked and apply this test whether the attestation took place in the same or a different room from that occupied by the testator (see notes in L. R. A. 1916C, 952, 9 A. L. R. 1418).

As cases arose in which it clearly appeared that the will had been properly executed but the attestation of the witnesses was not within the view of the testator, the injustice of the strict construction became apparent, and decisions followed in which it was held to be sufficient if the witnesses signed within the hearing of the testator and so near to him as not to be substantially away from him and that the phrase "in the presence of the testator" should be construed according to the circumstances of each particular case. 28 R. C. L. p. 129.

The Michigan court was among the first to adopt the more liberal rule of construction. In *Aikin* v. *Weckerly,* 19 Mich. 482, 504, it was said:

"The condition and position of the testator when his will is attested and in reference to the act of signing by the witnesses, and their locality when signing, must be such that he has knowledge of what is going forward, and is mentally observant of the specific act in progress, and, unless he is blind, the signing by the witnesses must occur where the testator, as he is circumstanced, may see them sign if he choose to do so.

"If, in this state of things, some change in the testator's posture is requisite to bring the action of the witnesses within the scope of his vision, and such movement is not prevented by his physical infirmity, but is caused by an indisposition or indifference on his part to take visual notice of the proceeding, the act of witnessing is to be considered as done in his presence."

The sufficiency of the attestation was next presented in *Maynard* v. *Vinton,* 59 Mich. 139 (60 Am. Rep. 276), and, while the court found it unnecessary to hold otherwise than in *Aikin* v. *Weckerly, supra,* Mr. Justice CHAMPLIN said:

"The object of the statute is to protect the testator against the fraud of parties witnessing the instrument, and prevent the substitution of one writing for another; and so astute have some courts been in construing the statute to prevent frauds upon the testator that they have perpetrated the most glaring frauds upon the testator by defeating his will simply because the footboard of the bed was too high for the testator to see the witnesses sign their names at a table standing at the foot of the bed (*Newton* v. *Clarke,* 2 Curt. 320 [163 Eng. Repr. 425]); or because, although the witnesses were in plain sight of the testator, yet, when they signed, their backs were towards him (*Graham* v. *Graham,* 10 Ired. [32 N. C.] 219).   *   *   *   I confess I do not see why the word 'presence' should not be held to convey the idea attached to its ordinary signification in the common use of language.   It is not a technical term or scientific word.   Why should a meaning be put upon this word 'presence' that implies that every person who is called upon to witness the execution of a will is presumed to be willing and anxious to foist upon the testator a spurious document, and hence required to write his name under the eye (if he has one) of the testator.   Such a construction must have been born of suspicion, and reared and maintained in distrust, of the morality and honesty of our fellow-beings, and I think ought to be relegated to that age of eye servants whence it originated.   The common experience of mankind does not demonstrate that all men are dishonest, and watching and seeking an opportunity to perpetrate a fraud, or to take advantage of the weak and helpless."

The question next came to this court in *Cook* v. *Winchester,* 81 Mich. 581 (8 L. R. A. 822).   In that case the witnesses signed on a table in a kitchen adjoining the bedroom in which the testatrix was lying. It was impossible for her to see the table or the wit-

nesses, and she was unable to move to do so. There was no table in the bedroom, and that in the kitchen was about 12 feet from the bed. It also appeared that, after the witnesses had signed their names, the will was shown to her and she said it was all right. After referring to the holding in *Aikin* v. *Weckerly, supra,* and what was said in *Maynard* v. *Vinton, supra,* Mr. Justice Morse, speaking for the court, said:

"In the definition of the phrase 'in the presence of' due regard must be had to the circumstances of each particular case, as it is well settled by all the authorities that the statute does not require absolutely that the witnessing must be done in the actual sight of the testator, nor yet within the same room with him. If, as before shown, they sign within his hearing, knowledge, and understanding, and so near as not to be substantially away from him, they are considered to be in his presence."

This case was cited with approval in *Re Moxon's Estate,* 234 Mich. 170, 175. It was also cited as authority in *Cunningham* v. *Cunningham,* 80 Minn. 180 (83 N. W. 58, 51 L. R. A. 642, 81 Am. St. Rep. 256), where a will was upheld which was subscribed by the witnesses in a room adjoining that in which the testator sat on the side of a bed, and out of his sight, and on a table which stood 10 feet from him. It was, however, at once brought to him, and he examined it and pronounced it all right.

It may be observed that the statute makes no exception in case the will is executed by one who cannot see. If the test of presence be vision, then a person who is blind would be unable to make a valid will, and yet such wills are admitted to probate, some courts holding that the names of the witnesses must be subscribed in such proximity that the testator

can know what is being done by the use of his remaining senses, and others holding that, if the witnesses sign where he could have seen them do so if he had normal vision, it is in his presence. These and many other somewhat similar holdings are cited and commented upon in 1 Page on Wills (2d Ed.), § 339 *et seq.*

In *Re Arneson's Will*, 128 Wis. 112 (107 N. W. 21), the will was admitted to probate, although when the witnesses signed "it might be believed that the testator's eyesight was so dim that he did not actually see the act of writing."

The purpose of the statutory provision is, as before stated, to make it certain that the instrument with the witnesses' names upon it is the genuine will of the testator, and it is urged in many of the cases that strict compliance therewith is necessary to prevent forgery, perjury or fraud. But if the witnesses be participants in the wrong, they may easily aid in its consummation by testifying that the testator had an uninterrupted view of them when they were signing.

We are here concerned with a will executed by a testator in the presence of two witnesses who, in the absence of a convenient place in the same room to subscribe their names as witnesses thereto, do so on a desk in an adjoining corridor about 30 feet from the bed in which the testator was then lying. It may fairly be inferred that he was conscious of and understood the reason why they left the bedroom and what they were doing when absent therefrom. They were within his "call," and within his "immediate nearness or vicinity." There is no claim, or even intimation, that the instrument signed by them was not in fact that executed by the testator. After they had subscribed their names as witnesses, it was

shown to him and, after examining it, he expressed his satisfaction therewith. The injustice of rejecting the instrument as his will, when compared with any danger of imposition on him by declining to construe the language of the statute more strictly, is apparent.

The judgment is affirmed.

McDONALD, C. J., and WEADOCK, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.