MARY A. HAMMOND and another *vs.* MATHILDE M. DIKE.

January 3, 1890.

Probate of Codicil—Testamentary Capacity—Evidence.—Upon an is-
    sue of testamentary capacity, where the testator, who had previously been
    of sound disposing mind and memory, was suddenly prostrated with
    severe and fatal illness, during which he executed a codicil to his will, it
    is competent for the proponent to prove that a short time before he was
    taken sick the testator had expressed his intention to make such changes
    in his will as he did make by his codicil.

Same.—It is proper, in such cases, to show the consistency of the will with
    the natural inclinations and previously declared intentions of the testator.

Impeachment of Witness—Foundation Requisite.—Where it is sought
    to impeach the statements of a witness by proof of his admissions con-
    tained in a deposition or other writing signed by him, the proper founda-
    tion should be laid therefor as in other cases, by first directing his atten-
    tion to the particular matters in question, and giving him an opportunity
    to explain.

An instrument having been admitted to probate in Rice county as
a codicil to the last will of William H. Dike, the two daughters of the
testator, who had contested the codicil in the probate court, appealed
on questions of law and fact to the district court for the same county,
where issues were framed for a jury and tried before *Buckham*, J. The
jury found the codicil was signed and attested in due form, but that,
at the date of its execution, the testator was not of sound and dispos-
ing mind and that it was not his codicil. The proponent, Mathilde
M. Dike, appeals from an order refusing a new trial.

*H. S. Gipson*, for appellant.

*Geo. W. Batchelder*, for respondents.

VANDERBURGH, J. This controversy arises over the codicil to the
last will of William H. Dike, deceased, the validity of which is con-
tested by the respondents, on the sole ground that at the time of its
execution he was not of sound disposing mind and memory. By his
will, which was made in 1886, he made the following disposition of
the estate then possessed by him, viz.: "After my wife, Matilda M.
Dike, has received what is secured to her by the laws of this state,

all the rest and residue of my estate, real and personal, I give and bequeath, share and share alike, to Mary A. and M. Louise Hammond, daughters of John and Maria Hammond, of Essex county, New York." The codicil makes additional provision for his wife, and it is as follows: "I give and bequeath to my wife, Matilda M. Dike, two-thirds of the judgment lately recovered by me against the state of Minnesota, on my old railroad claims, in addition to a life-estate in our homestead, and she shall have one-third of all the rest and residue of the estate, the same as the law would give it if there were no will, and the rest shall go as in my last former will directed." It is affirmed by the verdict of the jury that the codicil was formally executed; that is to say, it was signed by the testator, and duly attested in his presence. And it is beyond controversy that, up to the Sunday preceding his death, he was of sound mind, and had sufficient testamentary capacity to dispose of his estate, by will or otherwise, though he was of the age of 75 years, and was suffering from a complication of diseases which had become chronic. His fatal illness began on Sunday night, and, commencing with severe pain, speedily resulted in great bodily weakness and prostration. He executed the codicil on Monday evening, and died the next morning. He was apparently in a state of unconsciousness most of the time during his sickness, believed by some of the medical witnesses to have been *coma* caused by uremic poisoning, the result of kidney disease. But the evidence in behalf of the proponent tended to show that he could be aroused, and was conscious at intervals, and that he answered questions, recognized persons, including the attesting witnesses, and voluntarily gave directions in respect to his will; spoke of his own accord of the judgment which he had obtained; and, in answer to a request made of him by his wife, *(the proponent,)* declined to give her certain property, and declared his purpose to adhere to his previously expressed intention to give the property spoken of by her to the contestants. There is a conflict between the medical experts as to the measure of consciousness and mental capacity which he may have had, or which would be compatible with his physical condition. One of them, called by the proponent, testified that he evidently understood his condition, and would be able to decide

about such things as were suggested by the counsel, and "that it was not unusual in uremic conditions for patients to arouse to a sound mental condition."

After the class of evidence we have referred to had been introduced on behalf of the proponent, and in connection therewith, as a part of her case, her counsel offered to prove that the week before the testator died he had arranged to have his will changed in the way it was changed by the codicil, and his declarations on that subject; and also that on the Saturday previous to his death he informed one Lowell that he would like to come to his office to make a change in his will, involving the disposition of two-thirds or three-fourths of the judgment referred to. This evidence was objected to by the contestants, and the court sustained the objection, on the ground that there was no question of undue influence in the case. It must be taken as a ruling upon the merits of the proposition. Had mere formal objections been made, they might have been obviated at the time. The question must therefore be deemed to be fairly raised as to the competency and materiality of such evidence on the issue of the testamentary capacity of the testator. We think the evidence was admissible on that issue. The question was, substantially, whether of his own free will the testator intended to make the testamentary disposition it is claimed he did make by his codicil, and whether he was able to and did comprehend the nature and effect of the transaction in its different bearings, including the subject-matter and the effect of the testamentary act upon his heirs and legatees named in the prior will. 1 Redf. Wills, *130, notes. A testator may be of sound disposing mind and memory sufficient to sustain· a will executed by him, though the state of his health and consequent mental condition may be unequal to business transactions of a more exacting nature; and his strength might hold out for the completion of a transaction involving but few details, and requiring his attention but a short time, while it would be insufficient for the disposition of a large estate under an elaborate will. *Kempsey* v. *McGinniss*, 21 Mich. 123; Schouler, Wills, § 32; *Sheldon* v. *Dow*, 1 Dem. Sur. 503. Certainly, then, in determining the question of the capacity of the testator to understand the situation in which he stood in relation to

the disposition of his estate, whether the subject was new or familiar to his thoughts, and what his previous intentions may have been, as shown by his acts or declarations, were important and material matters for the consideration of the jury. It is said by an eminent judge, in *Harrison* v. *Rowan*, 3 Wash. C. C. 580, 586, that "most men, at different periods of their lives, have meditated upon the subject of the disposition of their property by will; and, when called upon to have their intentions committed to writing, they find much less difficulty in declaring their intentions than they would in comprehending business in some measure new." If, then, the testator, in this instance, contemplated a change in the terms of his will, in view of an accession to his property, and had manifested his purpose so to do a short time before his sickness, these things would be material to be considered in determining whether he was able to understand, and did understand, the nature of the business in which he was engaged at the time he executed the codicil, and the scope and effect of the transaction. *Sloan* v. *Maxwell*, 3 N. J. Eq. 563, 572; *Banks* v. *Goodfellow*, L. R. 5 Q. B. 549, 567; *Moore* v. *Moore*, 2 Bradf. Sur. 261. It is well settled that the nature and terms of the will itself are to be judicially regarded as an essential and important part of the evidence of testamentary capacity; and so, also, must be regarded its consistency or inconsistency with the situation, natural inclinations, and previously declared intentions of the testator. *Dinges* v. *Branson*, 14 W. Va. 103, 118; *In re Blakely's Will*, 48 Wis. 294, 301, (4 N. W. Rep. 337;) *Irish* v. *Smith*, 8 Serg. & R. 573. And this rule is just as applicable in cases of doubtful capacity from death-bed sickness as from other causes. *Stewart* v. *Lispenard*, 26 Wend. 255, 313; *Irish* v. *Smith*, 8 Serg. & R. 573. Such declarations, especially if recent, inform the jury of the state of mind of the testator when confessedly sound, and so aid in determining whether the instrument is the product of the same will. *Thornton* v. *Thornton*, 39 Vt. 122, 158; *Woodcock* v. *Johnson*, 36 Minn. 217, (30 N. W. Rep. 894.) It was error, therefore, to exclude the evidence offered. In view of another trial, we express no opinion in respect to the character of the evidence or its sufficiency to justify the verdict.

In the probate court the evidence of several witnesses was reduced to writing *in extenso,* in the form of depositions, and signed by the witnesses. Some of these depositions were offered in evidence entire by proponent, to impeach the testimony of the same witnesses on the trial in the district court, but were rejected because the proper foundation had not been laid therefor by first directing the attention of the witnesses to the particular matters involved in the supposed contradiction, and giving them an opportunity to explain. The objection was well taken, and was properly sustained. The ruling of the court is in accordance with the settled rule of practice in this state.

Order reversed.