ALBERT SASS, Administrator, v. GENEVA McCORMACK.[1]

Oct. 15, 1895.

Nos. 9686—(265).

**Gift Causa Mortis—Mental Competency.**
The same degree of mental competency is required to make a gift causa mortis as is required to make a will.

**Findings Sustained.**
Evidence considered, and *held* to sustain the findings of the trial court.

Appeal by plaintiff from an order of the district court for Ramsey county, Otis, J., denying a motion for a new trial. Affirmed.

*John D. O'Brien* and *W. H. Leeman*, for appellant.
*Ambrose Tighe* and *John W. Lane*, for respondent.

[1] Reported in 64 N. W. 385.

START, C. J.   The plaintiff's intestate, William Hughes, on January 5, 1895, indorsed, delivered, and transferred in form three certificates of deposit, aggregating the sum of $4,500, payable to his order, and then owned by him, to Mary McCormack, the mother of the defendant, for the latter, who is an infant nine years old.   This action was brought by his administrator to set aside such transfer on the ground that it was procured to be made by undue influence of interested parties, and that at the time it was made he was mentally incapacitated to make it.   The trial court found that Mr. Hughes was, at the time of the transfer, under no restraint or undue influence, and voluntarily indorsed and set over to the defendant the certificates, and that he was then mentally competent to do so.   The plaintiff appeals from an order denying his motion for a new trial.

Is this finding of the trial court sustained by the evidence?   This is the only question in the case, and we answer it, "Yes."   It is undisputed:   That Mr. Hughes came from his home, in Sibley county, to the city of St. Paul, about January 1, 1895, and consulted with a doctor as to a malady with which he was afflicted.   The result of the consultation was that on January 3 he submitted to a surgical operation at St. Joseph's Hospital, and died there on Monday, January 7, at about 1 o'clock a. m.   Prior to Saturday, January 5, he was at all times undoubtedly of sound mind, but in the afternoon of that day his condition, mentally and physically, changed rapidly for the worse, and about 6 o'clock, when the transfer was made, his mental condition was such that Mr. Darragh, an attorney who had been called in, declined to draw his will, but he did assist in the making of the transfer of the certificates.   The appellant lays great stress upon this refusal, and claims that it is almost conclusive evidence of the mental incapacity of Hughes to dispose of the certificates.   We do not so regard it, for the fact that the attorney did assist in the transfer is significant.   The same commendable caution and sense of right that induced Mr. Darragh to refuse to draw the will would have also induced him to refuse to take any part in securing the transfer from a dying man, whom he believed to be mentally incapable of making it.   The inference we draw from this is that Mr. Darragh was of the opinion that Hughes, while incompetent to dispose of his entire real and personal estate, yet

was competent to make a transfer of these particular certificates, the disposition of which, the evidence shows, he had considered and determined at a time when all parties concede his competency.

It is true that the same degree of mental competency is required to make a gift causa mortis as is required to make a will, and, while we are of the opinion that when the transfer was made Hughes was mentally incompetent to collect the details of all of his property, including his real estate, and dispose of it by will, yet we are satisfied that as to the certificates he was competent to dispose of them by will. The evidence shows that he was warmly attached to the defendant; that he had neither wife nor child; and that he had, previous to the transfer, considered the disposition of the certificates, and had determined to give them to her in the event of the issue of the surgical operation resulting fatally, and, pursuant to such purpose, delivered them, but without indorsing them, when on his way to the operating room, to the mother of the defendant, for her. This purpose to give the certificates to the defendant is an important factor in determining whether or not he reasonably understood what he was doing, and intelligently completed his intended gift, for it would require his attention but a short time to recall his purpose and execute it. Hammond v. Dike, 42 Minn. 273, 44 N. W. 61. While he was in a state of unconsciousness most of the time from 5 o'clock Saturday afternoon until he died, yet the evidence of all the witnesses save one tends to show that until after the transfer he was, when aroused, capable of exercising an intelligent will power, and that when he executed the gift he fully understood the nature and effect of his act. It will serve no practical purpose to here review the evidence in detail. We have carefully considered the whole of it, and the conclusion reached is that it amply sustains the findings of the trial court.

Order affirmed.