EMERY H. CUNNINGHAM v. ROBERT J. CUNNINGHAM and Others.[1]

June 13, 1900.

Nos. 12,043—(154).

**Execution of Will—Attestation in Adjoining Room.**

C. duly signed an instrument intended to be his last will and testament, two physicians being present at his request to attest as witnesses. C. was then sitting on the side of his bed, the paper lying on a book in front of him, the book being upon a chair. One of the physicians took the paper, and both stepped through a doorway into an adjoining room, and affixed their signatures at a table which stood ten feet from the testator. He could have seen the table by stepping forward two or three feet, but did not do so. The attestation consumed not to exceed two minutes of time. The witnesses returned to the testator; their signatures were pointed out to him; he took the paper into his own hands, looked it over, and pronounced it "all right." *Held*, that G. S. 1894, § 4426, which requires that wills must be attested and subscribed by the witnesses in the "presence" of the testator, was sufficiently complied with.

Petition in the probate court for Olmsted county by Emery H. Cunningham that an instrument purporting to be the last will and testament of Robert F. Cunningham, deceased, wherein petitioner

1 Reported in 83 N. W. 58.

was named as executor, be admitted to probate. Robert J. Cunningham and others filed objections, and from an order admitting the will to probate, appealed to the district court for said county. In the district court the case was tried before Snow, J., who found in favor of proponent. From a judgment entered pursuant to the findings and affirming the order of the probate court, contestants appealed to the supreme court. Affirmed.

*Thomas Fraser* and *George W. Somerville*, for appellants.

The statutory provisions in reference to the execution of a will must be strictly complied with. Waite v. Frisbie, 45 Minn. 361; Tobin v. Haack, 79 Minn. 79; Lewis v. Lewis, 11 N. Y. 220. A subscription made in the same room with testator is prima facie in his presence, while a subscription made in another room is prima facie not in his presence. 29 Am. & Eng. Enc. 217; Smith, Prob. L. 23; 2 Greenleaf, Ev. § 678; Chase v. Kittredge, 11 Allen, 49, 53; Schouler, Wills (2d Ed.) §§ 319–342. In view of this presumption, it has been held that where such subscription takes place in a room other than the one in which testator signs, the subscription by the witnesses must actually be seen by testator. Mandeville v. Parker, 31 N. J. Eq. 242; Hill v. Barge, 12 Ala. 687. A subsequent recognition by the witnesses of their signature in the presence of testator will not cure the original omission to sign in his presence. Lamb v. Girtman, 33 Ga. 289; Riggs v. Riggs, 135 Mass. 238; Town v. Ballou, 15 R. I. 58; Hindmarsh v. Carlton, 8 H. L. Cas. 160; Chase v. Kittredge, supra; 1 Redfield, Wills (3d Ed.) 246, note; Reynolds v. Reynolds, 1 Speers (So. C. L.) 253; Den v. Mitton, 7 Hals. (N. J. L.) 70; Combs v. Jolly, 2 H. W. Green, 625; Mickle v. Matlack, 2 Harr. (N. J. L.) 86; Ragland v. Huntingdon, 1 Ired. L. 561; Edelen v. Hardeys, 7 H. & J. (Md.) 61, 64; Boldry v. Parris, 2 Cush. 433; Duffie v. Corridon, 40 Ga. 122; Watson v. Pipes, 32 Miss. 451, 467; Rash v. Purnel, 2 Har. (Del.) 448, 458. The only notable exception to this rule is Cook v. Winchester, 81 Mich. 581.

There is a long and almost unbroken line of authorities holding that the attesting and subscribing must take place within testator's range of vision, so that he may see the act of subscribing if he wishes, without a material change of his position, and that he

must be observant of the act while in progress. Doe v. Manifold, 1 Maule & S. 294; Russell v. Falls, 3 Har. & M'H, 457, 472; Chase v. Kittredge, supra; Mandeville v. Parker, supra; Witt v. Gardiner, 158 Ill. 176; Reynolds v. Reynolds, supra; Neil v. Neil, 1 Leigh, 6, 28; Graham v. Graham, 10 Ired. L. 219; Eccleston v. Petty, Carth. 79; Reed v. Roberts, 26 Ga. 294; Drury v. Connell, 177 Ill. 43; Hill v. Barge, supra; In Matter of Downie's Will, 42 Wis. 66. The text writers are equally uniform in upholding the rule. 29 Am. & Eng. Enc. 215, 217; Schouler, Wills (2d Ed.) §§ 319, 342; Smith, Prob. L. (3d Ed.) 22; 1 Woerner, Am. L. Adm. § 40; 2 Greenleaf, Ev. 678; 1 Jarman, Wills (5th Ed.) 82; 1 Jarman, Wills (6th Ed.) 117; Beach, Wills, §§ 47, 49; 1 Redfield, Wills (4th Ed.) 244.

*Charles C. Willson*, for respondent.

The word "presence" does not necessarily mean "sight." The first of the nine definitions given of "presence" in the Century Dictionary is "before, in view, or at hand." The first of the six definitions given by Webster is "within sight, or call, at hand." The witnesses signed, if not actually in the sight of testator, within his call, or at his hand. They complied with the definitions. In Matter of Allen's Will, 25 Minn. 39; Cook v. Winchester, 81 Mich. 581; Herrick v. Snyder, 27 Misc. (N. Y.) 462; Riggs v. Riggs, 135 Mass. 258; Sturtavant v. Birchett, 10 Grat. 67; Schouler, Wills (2d Ed.) § 343; 1 Jarman, Wills (6th Ed.) 117; Drury v. Connell, 177 Ill. 43.

In a note to Mandeville v. Parker, 31 N. J. Eq. 242, all the prior cases are collected. Since that time the tendency has been, where the question is open, to sustain wills witnessed as this one was, especially in a case where the trial court admitted the will to probate. Will of Meurer, 44 Wis. 392.

COLLINS, J.

G. S. 1894, § 4426, provides:

"No will, except such nuncupative wills as are hereinafter mentioned, shall be effectual to pass any estate, real or personal, or to change or in any way affect the same, unless it is in writing, and signed at the end thereof by the testator, or by some person in his presence and by his express direction, and attested and subscribed in his presence by two or more competent witnesses."

And the only question in issue on this appeal is whether the alleged will was attested and subscribed in the presence of the testator, Cunningham, by the two persons whose names were attached as witnesses.

The testator had been confined to his room for some time. It was a small bedroom with a doorway which led into a large room upon the north, the head of his bed being near the partition between the two. There was no door, but a curtain had been hung in the doorway, which was drawn to the west side at the time in question. Three days before the signing the testator sent for his attending physician, Dr. Adams, to come to his house, and draw his will. At the same time he sent for Dr. Dugan to be present as a witness. The draft of a will made by Dr. Adams as dictated by Cunningham was unsatisfactory, and both of the physicians went away. They were again summoned November 12, 1898, and went to the house in the forenoon. Dr. Adams drew a new will as instructed by Cunningham, the latter remaining in his bed. When the document was fully written, both men stepped to the bedside, and Dr. Adams read it to the sick man. Having heard it read through, Cunningham pronounced it satisfactory, and then signed it. When so signing he sat on the edge of the bed, and used as a place for the paper a large book which was lying upon a chair. Drs. Adams and Dugan were then requested to sign as witnesses. For this purpose they stepped to a table in the sitting room, which stood about ten feet from where Cunningham sat, and there affixed their signatures. The time occupied in so signing did not exceed two minutes, and immediately thereafter Dr. Adams returned to the bedside with the paper. Dr. Dugan stepped to the doorway, about three feet from Cunningham, and then Adams showed the signatures of the witnesses to him as he sat on the edge of the bed. Cunningham took the paper, looked it over, and said, in effect, that it was all right. From where he sat he could not see the table which was used by the witnesses when signing. He could have seen it by moving two or three feet. While they were signing he leaned forward, and inquired if the instrument needed a revenue stamp, to which Dr. Adams replied that he did not know, the reply being audible to Cunningham.

These are the salient and controlling facts found by the court below, on which it based an ultimate finding that the instrument so witnessed was attested and subscribed in the presence of the testator, and then affirmed the order of the probate court admitting it to probate as the last will and testament of the deceased.

The appellants (contestants below) insist that the attestation and subscription by the witnesses was insufficient, because Mr. Cunningham did not and could not see the witnesses subscribe their names from where he sat, and their contention has an abundance of authority in support of it from jurisdictions in which statutes copied from the English law on the subject, and exactly like our own, are in force. The rule laid down in these authorities is that the attesting and subscribing by the witnesses must take place within the testator's range of vision, so that he may see the act of subscribing, if ·he wishes, without a material change of his position; and that he must be mentally observant of the act while in progress. Lord Ellenborough thus stated it in Doe v. Manifold, 1 Maule & S. 294:

"In favor of attestation it is presumed that if the testator might see, he did see. But I am afraid that if we get beyond the rule which requires that the witness should be actually within the reach of the organs of sight, we shall be giving effect to an attestation out of the devisor's presence: as to which the rule is, that where the devisor cannot by possibility see the act doing, that is out of his presence."

Construing the same words in the Illinois statute, it was recently said:

"This act of attestation consists in the subscription of the names of the witnesses to the attestation clause as a declaration that the signature was made or acknowledged in their presence. It is this act of attestation, by subscribing their names to the will as witnesses thereto, which the statute requires to be in the presence of the testator. The object of the law, as frequently declared, is to prevent fraud or imposition upon the testator, or the substitution of a surreptitious will, and to effectuate that object it is necessary that the testator shall be able to see and know that the witnesses subscribe their names to the paper which he has executed or acknowledged as his will. The purpose of the statute is not attained by mere ability to see the witnesses or some part of them, but the

act of attestation is the thing which must be in the presence of the testator. * * * It would not be an attestation in the presence of the testator if he could not see the act of attestation, but merely understood from the surrounding circumstances that the act was taking place." Drury v. Connell, 177 Ill. 43, 52 N. E. 368.

In brief, the courts have, almost without exception, construed a statute requiring an attestation of a will to be in the "presence" of the testator to mean that there must not only be a consciousness on the part of the latter as to the act of the witnesses while it is being performed, but a contiguity of persons, with an opportunity for the testator to see the actual subscribing of the names of the witnesses, if he chooses, without any material change of position on his part. And yet an examination of the decided cases wherein the ever-varying circumstances and conditions have been considered, and this rule applied, will convince the reader that the task of application has not been an easy one, and has led to surprising results at times. Some years ago a large number of American and English cases were collected in a note appended to Mandeville v. Parker, 31 N. J. Eq. 242, and an examination thereof will show the absurd and inconsistent positions in which the courts have frequently placed themselves.

As will be seen from the facts surrounding the cases mentioned in this note, or cited in the text-books in support of this rule, it has been held almost universally that an attestation in the same room with the testator is good, without regard to intervening objects which might or did intercept the view; and also that an attestation outside the room or place where the testator sat or lay is valid if actually within his range of vision. And no court seems to have doubted that a man unable to see at all could properly make a will under the statute, if the witnesses attested within his "conscious" presence, whatever that means. Exactly why or how an exception in the case of one temporarily or permanently blind can be injected into this statute has not been attempted by any court or writer, so far as we know. Nor has there been any success in the effort to show why one kind of an intervening object—a partition wall, for instance—is better calculated to afford an opportunity for the perpetration of a fraud upon the testator than is another kind, say, the

closed curtains of an old-fashioned bed, or the head or foot board of a bedstead, or any other article of furniture which happens to be an obstruction to the sight. Again, it is difficult to see what sound distinction can be made, when applying the rule, between a case where the testator can see the witnesses attest, if he chooses to lean his body forward a few inches, and the case where the act can be seen if he steps forward the same distance. Or, take a case where a testator has been injured, and is compelled to lie on his back with his eyes fixed on the ceiling. Must the witnesses affix their signatures from an elevation in order to sign in his presence? No case has gone that far, and yet what difference would it make with such a testator in fact or in sound reason if the will was attested ten feet distant, on a table in an adjoining room, or on a table the same distance from the bed, but in the same room?

Take the case at bar. The testator sat on the edge of his bed when the witnesses signed at the table in the adjoining room, a few feet distant, and within easy sound of his voice. If he could have seen them by leaning forward, the authorities in favor of upholding the will are abundant. Physically he was capable of stepping two or three feet forward, and from this point the witnesses would have been within his range of vision. It is extremely difficult to distinguish between the two cases, and yet it has been done again and again in applying the rule.

We might continue these suggestions and queries, as has been done quite frequently by courts which have not been entirely satisfied with a very rigid construction of the statute, and have not hesitated to say so; but it seems unnecessary, for there is one feature in these findings of fact which is sufficient, in our judgment, to warrant an affirmance, although there are many decisions to the contrary. As before stated, the court found that the witnessing of the will consumed not more than two minutes, and that immediately thereafter Dr. Adams returned to the testator while Dr. Dugan came to the doorway, not over five feet distant, whereupon the former "showed the signatures of the witnesses to the testator. The latter took the will, looked it over, and said in effect that it was all right." To say that this was not a sufficient attestation within a statute which requires such attestation to be in the "pres-

ence" of the testator, simply because the witnesses actually signed a few feet out of the range of his vision, is to be extremely technical without the slightest reason for being so. The signing was within the sound of the testator's voice; he knew what was being done; the act occupied not more than two minutes; the witnesses returned at once to the testator; their signatures were pointed out to him; he took the instrument into his own hands, looked it over, and pronounced it satisfactory. The whole affair, from the time he signed the will himself down to and including his expression of approval, was a single and entire transaction; and no narrow construction of this statute, even if it has met the approval of the courts, should be allowed to stand in the way of right and justice, or be permitted to defeat a testator's disposition of his own property. In Cook v. Winchester, 81 Mich. 581, 46 N. W. 106, it was said, at page 590:

"In the definition of the phrase 'in the presence of,' due regard must be had to the circumstances of each particular case, as it is well settled by all the authorities that the statute does not require absolutely that the witnessing must be done in the actual sight of the testator, nor yet within the same room with him. If, as before shown, they sign within his hearing, knowledge, and understanding, and so near as not to be substantially away from him, they are considered to be in his presence."

But, as was said, in substance, in the same case, we agree that this will was validly executed expressly on the ground that the whole transaction was an entirety in fact, and that, immediately after the witnesses had attested, the instrument was returned by them to the hands of the testator, his attention was called to their signatures, and he expressed his satisfaction and approval of what had been done. This view, which does no violence to the spirit and intent of the statute, is not without precedent and authority aside from the Michigan case, although it may, as said by the court below, run contrary to a majority of the decisions. See Sturdivant v. Birchett, 10 Grat. 67, and Riggs v. Riggs, 135 Mass. 238.

Judgment affirmed.