CHURCH OF ST. VINCENT DE PAUL and Another v. MARY ANN BRANNAN.[1]

February 23, 1906.

Nos. 14,624—(157).

**Mental Capacity of Testator.**

In proceedings involving the validity of a will, it is *held* that the question whether the testator was of sound or unsound mind, or mentally competent to make the same, was, on the evidence, a question of fact, and the findings of the trial court are sustained.

**Construction of Will.**

Though a will prepared from instructions and directions given by the testator, and signed by him upon the assurance that it expresses his

[1]Reported in 107 N. W. 141.

wishes, will be invalid if the language thereof does not in legal effect. make the provisions intended by him, it will not necessarily be invalid; if by the will, construed in connection with the statutes of inheritance,. the property passes to the persons intended.

**Partial Intestacy.**

A failure to incorporate a clause giving the residue of testator's estate to the person who in the absence of a will would inherit the same will not render the will invalid.

**Attestation.**

Whether the will involved in this proceeding was properly attested was a question of fact for the trial court. Cunningham v. Cunningham, 80. Minn. 180, followed and applied.

**Evidence.**

The findings of the trial court in the respects stated in the opinion *held.* sustained by the evidence.

An instrument purporting to be the last will of James Brannan, deceased, having been admitted to probate by the probate court for Ramsey county over the objections of deceased's mother and sole heir, Mary Ann Brannan, the latter appealed to the district court for that county. The case was tried before Bunn, J., who found in favor of proponent, and directed that the order of the probate court be affirmed. From an order denying a motion for a new trial, contestant appealed. Affirmed.

*Munn & Thygeson* and *Howard Wheeler,* for appellant.

*C. D. & R. D. O'Brien,* for respondents.

BROWN, J.

James Brannan, late of Ramsey county, having no wife or children, died leaving what purported to be his last will and testament, by which he bequeathed $500 to Rev. Lawrence Cosgrove for masses for his soul, $7,000 to the Church of St. Vincent de Paul, a corporation, and devised certain real estate owned by him to his mother. There was no residuary clause in the will, and $3,000 in money belonging to him was left undisposed of. Subsequent to his death the will was presented to the probate court of Ramsey county for allowance, to which the mother of deceased interposed certain objections, and challenged its validity upon several grounds. After trial before the court the will was duly allowed and admitted to probate, and contestant appealed to the dis-

trict court, where, after a trial before the court without a jury, the objections were held not well founded, and the order of the probate court was affirmed.

The objections to the allowance of the will in both of the courts below presented the issues: (1) Whether the deceased was mentally competent at the time it was executed. (2) Whether, as drawn, it represented his wishes and followed the directions given by him to the person who prepared it. (3) Whether it was signed and attested in accordance with the statutes on the subject. (4) Whether it was the free act and deed of the deceased, unaffected by fraud or undue influence. The validity of the bequest of $500 for masses was not questioned. The issues thus presented involved almost wholly questions of fact for the trial court to determine. The court found adversely to contestant upon all of them, and we have only to determine whether the evidence reasonably tends to sustain that result. A careful examination of the record leads to the conclusion that the findings cannot be disturbed. We apply the general rule that the verdict of a jury or findings of a trial court will not be disturbed by this court unless clearly against the evidence.

1. The evidence tending to show the mental incapacity of deceased is voluminous and conflicting, presenting a case peculiarly proper for the trial judge to determine. The witnesses were before him, and every opportunity afforded to judge of their credibility and fairness. It may be conceded that the evidence shows that the testator was mentally incompetent for some days prior and subsequent to the execution of the will; but there was affirmative evidence, for the trial court to accept or reject as true or false, that he was in a rational and lucid state of mind at the time of its execution, and had been so for some hours immediately preceding the act. If such was the state of his mind at the time, if his then condition enabled him to intelligently give directions for the disposition of his property, the will is valid, however feeble he may have been immediately preceding.

Fraser v. Jennison, 42 Mich. 206, 3 N. W. 882, was a case where contestants attempted to prove that the testator was of unsound mind at the time of executing the will, alleging various peculiarities and eccentricities of the testator and his great age and feeble physical condition.

The court, in disposing of the case, said: "It is not an uncommon impression that a will must be set aside whenever the existence of any mental disorder at the time of its execution is established. That this is not the law is apparent from the fact that the testamentary dispositions of monomaniacs are often sustained in spite of the mental disorder. When the monomania is conceded, it is only necessary to inquire further whether the provisions of the will are or are not affected by it, and the will stands or falls by that test."

The evidence in the case at bar will not warrant the conclusion as a matter of law that the particular disposition of Brannan's property was influenced by his weak mental condition. He had no wife or children, and it is not at all singular or suspicious that he gave a considerable portion of his estate to a religious denomination of his faith.

In re Butler's Will, 110 Wis. 70, 85 N. W. 678, the jury in the circuit court found mental incapacity. The supreme court, to which appeal was taken, reversed the judgment, and in the course of the opinion said: "The test is not whether the testator did the best or the wisest or the theoretically just thing in his will; but, did he have sufficient active memory to collect in his mind and comprehend, without prompting, the condition of his property, his relations to his children and other persons who might properly be his beneficiaries, and the scope and bearing of his will, and to hold these things in his mind a sufficient length of time to perceive their obvious relations to each other, and be able to form some rational judgment in relation to them?"

In Ring v. Lawless, 190 Ill. 520, 60 N. E. 881, the court says: "It has often been said by this and other courts that a person who has mental power to understand and transact ordinary business has capacity to make a valid will. The truth of this cannot be doubted, but it must not be understood to mean that that degree of mental power and vigor is requisite to testamentary capacity. Mental perception and power to think and reason of a lesser degree may be all that is requisite to the full understanding of everything involved in the execution of a will. * * * The real question * * * is * * * did he, at the time of making the instrument purporting to be his will, have such mind and memory as enabled him to understand the particular business in which he was then engaged."

The cases cited are in line with the authorities generally and sustain the proposition that if a will be made by a mentally unsound person during a lucid interval, and when he possessed the power of intelligent comprehension, the will is valid.   But as already suggested, the question in this case was one of fact which the trial court has passed upon, and we find no reason, from the evidence, on which to base a different conclusion, though it may be conceded that a strong case of incapacity was made out by contestant.

2. It is urged that the will, as drawn, does not express the wishes and intentions of the testator.   It appears that at the time the will was prepared he directed that all property owned by him, aside from the specific bequests made, be given to his mother, and it is urged that because no such provision was incorporated therein, it does not give effect to the directions given by him to the scrivener.   Of course where a will is prepared from instructions and directions given by the testator, and is signed by him upon the assurance that it expresses his wishes, if the language incorporated therein does not, in legal effect, make the provisions intended by him, it will be void.   Waite v. Frisbie, 45 Minn. 361, 47 N. W. 1069.   But that rule should not be applied where by the terms of the will there is no departure from the instructions given, and where the property of the testator is not diverted from the source or sources intended by him.   If, under the will, as prepared in any particular case in connection with the statutes of inheritance, the property of the testator passes to the persons intended, the will should not be held invalid, for the failure to incorporate therein a provision which the statutes supply.

In the case at bar, the residuary clause—that is, a provision giving to the mother all the rest and residue of testator's estate—was the only feature in which the directions to the scrivener were not fully expressed in the will.   The failure to include this did not divert the estate, for under the statutes that portion of the property descends to the person the testator intended should have it.

3. The question whether the will was properly signed and attested, is disposed of adversely to contestant by the decisions of this court in Re Allen's Will, 25 Minn. 39; and Cunningham v. Cunningham, 80 Minn. 180, 83 N. W. 58, 51 L. R. A. 642, 81 Am. St. Rep. 256.   It is insisted

97 M.—23

in support of this claim that the will was not signed by the witnesses in the "conscious" presence of the testator. The evidence upon this branch of the case tends to show that the will was signed by the testator upon a table adjoining his sickbed, and that it was signed by the witnesses immediately after he signed it, upon the same table, and in his immediate presence. There is further evidence that the testator did not actually see the witnesses sign the document, that he was lying upon the bed with his face in the opposite direction, and that Rev. Father Cosgrove stood between him and the table, thus obstructing testator's view; and it is contended, therefore, that the witnessing did not take place in his conscious presence. Whether the will was properly executed in this respect was, on the evidence, a question of fact for the trial judge to determine.

It was held in Cunningham v. Cunningham, supra, in effect, that an attestation of a will in the same room with the testator is good without regard to intervening objects which might or did intercept the view, and that if, in fact, the witnesses sign where they may be seen by the testator, the law is complied with. In that case the will was, after being signed by the testator, taken into an adjoining room, and there signed by the witnesses. There was no evidence that the testator did in fact see the attestation by the witnesses, but he could have done so had he looked. We are aware of the fact that there is a diversity of judicial opinion upon this subject, and that under some of the decisions the attestation of this will would be insufficient. But we are content with the rule laid down by our own court, and follow and apply it. Whether the Rev. Father Cosgrove occupied a position between the testator and one of the witnesses while in the act of signing the will, and whether such witness was objectionable to the testator, were questions of fact for the trial court.

4. The evidence also sustains the findings of the trial court that the will was not obtained by fraud or undue influence. It would serve no useful purpose to enter into a discussion of the evidence offered in the court below upon this feature of the case, and we refrain. Suffice it to say that we have fully examined it and find no reason for interfering with the conclusions reached by the trial court.

There was no error in the refusal of the trial court to submit the

issues to a jury.   Whether a jury trial should be had was a matter resting in the sound discretion of the trial court.   The other questions raised, being purely of fact, require no special mention.

Order affirmed.

JAGGARD, J., does not concur in the conclusion that the findings of the trial court are sustained by the evidence.