SEBASTIAN SCHLEIDERER v. NICHOLAS B. GERGEN.[1]

April 30, 1915.

Nos. 19,196—(96).

**Will — appeal from order admitting will.**

1. Under G. S. 1913, § 7491, a party entitled to appear in probate court and object to the probate of a will, but who does not so appear, may appeal to the district court from an order admitting the will to probate and may there contest the will.

**Will — what constitutes testamentary capacity.**

2. In order to make a valid will the testator must understand the nature, situation and extent of his property and the claims of others upon his bounty or his remembrance, and he must be able to hold these things in his mind long enough to form a rational judgment concerning them. The evidence in this case is sufficient to sustain a finding of the trial court that deceased had not sufficient mental capacity to make a will.

**Same.**

3. A person who is unable to understand, without being prompted, the nature and importance of the business she is transacting has not capacity to make a will.

Nicholas B. Gergen petitioned the probate court for Dakota county to admit to probate the last will and testament of Maria Latto, deceased. From the order of that court admitting the will to probate, Sebastian Schleiderer appealed to the district court for the county. The appeal was heard before Hodgson, J., who made findings and

[1] Reported in 152 N. W. 541.

Note.—The general question as to what constitutes testamentary capacity or incapacity is treated in notes in 27 L.R.A.(N.S.) 2 and L.R.A.1915A, 443.

reversed the order of the probate court. From an order denying his motion to set aside the order for judgment and for judgment in his favor, or for a new trial, Johnson, J., Nicholas Gergen appealed. Affirmed.

*W. H. Gillitt,* for appellant.

*Pilgram & Pulliam* filed a brief in favor of appellant.

*Latham & Pidgeon, Henry Spindler* and *C. S. Lowell,* for respondent.

HALLAM, J.

Rudolph Latto died in 1901, leaving an estate worth approximately $180,000. His wife, Maria Latto, was the principal beneficiary under the will. In April, 1911, Maria. Latto, then 78 years old, made a will disposing of part of her property. She never disposed of the balance. In September, 1912, she died and her will was presented to the probate court for probate. No objection was made and it was admitted to probate. Thereafter respondent, a half brother of deceased, appealed to the district court. That court, after a trial upon objection there interposed, held the will invalid, on the ground of incapacity of deceased to make a will. A motion for a new trial was made and denied, and the executor appeals to this court.

1. It is urged that the objector, having made no objection in the probate court, could not be heard to contest the will in the district court. We are of the opinion that the statute gives him this right. An appeal from an order or judgment of the probate court may be taken to the district court "by a party aggrieved * * * who, being entitled to be heard thereon, did not appear and take part in the proceedings." G. S. 1913, § 7491; Sheeran v. Sheeran, 96 Minn. 484, 105 N. W. 677. The objector is such a party. Having the right to appeal, he must necessarily have the right to try out the case on appeal. Otherwise the right of appeal would be a barren right. Early decisions relied on by proponent such as In re Hause, 32 Minn. 155, 19 N. W. 973, were decided under a statute differing in form and substance from the present statute, and they are not in point here. The trial court properly heard the case on the merits.

2. The principal contention of appellants is that the evidence does

not sustain the finding that the deceased was incompetent to make a will. The will embraced not over half her property. Some time after the making of the will her mental power had failed to such an extent that it was necessary for a guardian to be appointed over her. This subsequent condition would not be material were it not for the fact that it was the culmination of a gradual process of decay. There is evidence that for a long period of years her mental powers had gradually failed. The failure of her mind manifested itself in loss of memory and inability to grasp the significance of ordinary business transactions. It is impossible to detail the circumstances which were shown in evidence to indicate her failing mental powers. A few of the most important will be noted. At times she failed to recognize her near relatives and intimate friends. On one occasion she did not recognize her own sister. On another she denied relationship with a relative of whose relationship she must have known. Her conversation was erratic and disconnected. She would give orders to employees and persons with whom she did business and then forget she had ever talked to them on the subject. There is evidence that she had no conception of the amount of property which she owned. She had delusions that someone had drawn her money from the bank. A short time before the making of the will she made several trips to the office of the county treasurer to pay her taxes, although told on each occasion that her taxes had been paid. She would repeatedly make demands at the bank for payments of interest due or to become due, when in fact payments were always made directly to her. A large number of witnesses, neighbors and friends of deceased, after detailing facts, gave their opinion that deceased was not competent to make a will.

The setting aside of a will is no light matter. Breaking a will is much like making a new one, for it results in passing the property of deceased into channels provided by law in case of intestacy, without the consent of the owner. The fact that the testator is eccentric, or erratic or unreasonable, does not incapacitate him from making a will. Not every mental disorder disqualifies him. The test is whether the will is affected by the disorder. Church of St. Vincent De Paul v. Brannan, 97 Minn. 349, 107 N. W. 141. Not so much

capacity is required to enable a person to make a will as to make a contract where he must hold his own with others dealing with him at arm's length. Hammond v. Dike, 42 Minn. 273, 44 N. W. 61, 18 Am. St. 503; Slaughter v. Heath, 127 Ga. 747, 57 S. E. 69, 27 L.R.A.(N.S.) 1; Ring v. Lawless, 190 Ill. 520, 60 N. E. 881. Yet a person desiring to make a will must possess testamentary capacity. He is disposing of property. He must understand the nature of the act and its effect. He must understand the nature, situation and extent of the property he has to dispose of and the claims of others upon his bounty or his remembrance, and must be able to hold these things in mind long enough to form a rational judgment concerning them. Hammond v. Dike, 42 Minn. 273, 44 N. W. 61, 18 Am. St. 503; Buck v. Buck, 126 Minn. 275, 148 N. W. 117. Naturally it requires somewhat greater capacity to dispose of a large and diversified estate among numerous recipients with various gradations of claims than it does to dispose of a small and simple estate among the members of one's own immediate family. Trish v. Newell, 62 Ill. 196, 205. While the evidence is far from conclusive, we think it is sufficient to make the question of the mental capacity of deceased a question of fact. The trial court is the tribunal provided by law for the determination of questions of fact. We should not disturb its decision unless it is clearly and palpably against the evidence. We cannot say that the decision is clearly and palpably against the evidence, and it is sustained.

3. The trial court found that deceased "was of feeble mind and memory and was unable to understand or comprehend the amount, value or extent of her property and estate * * * was unable to understand the relation which she sustained to those who might have a claim upon her bounty, and was unable to understand *without being prompted* the nature and importance of the business she was transacting." It is claimed that the words italicized imply that deceased was able to understand the nature and importance of the business she was transacting after being prompted, and that this constitutes sufficient mental capacity to make a will. To this last proposition we cannot agree. A person who is unable to understand the nature and importance of the business he is transacting without being prompted

has not the capacity to make a will. The authorities go somewhat further than this and hold that he must be able, without prompting, not only to comprehend, but to collect in his mind, the condition and extent of his property and his relation to those who might properly be his beneficiaries, and the other facts touching the scope and bearing of his will, and to hold these things in his mind a sufficient length of time to perceive their obvious relation to each other, and be able to form some rational judgment in relation to them. In re Butler's Will, 110 Wis. 70, 85 N. W. 678; Spratt v. Spratt, 76 Mich. 384, 43 N. W. 627; note to 27 L.R.A. (N.S.) 46. With the understanding that this rule does not preclude prompting of the memory as to particulars and details which a person of capacity and mental vigor may not be expected to carry in mind, the rule is doubtless correct. See Trish v. Newell, 62 Ill. 196, 14 Am. Rep. 79. It is clearly proper to hold, as the trial court did in effect, that no person can be deemed to have testamentary capacity who cannot, without prompting, understand the nature and importance of the business of making a will.

Order affirmed.

Schaller, J., took no part.