IN RE ESTATE OF ADAM KNOPF.
WILLIAM KNOPF v. CHARLES F. EBEL.[1]

November 7, 1924.

No. 24,152.

**Evidence sufficient that testator was of sound mind.**
Evidence examined and *held* sufficient to warrant a finding that when a will was executed the testator was of sound mind.

William Knopf filed objections in the probate court for Rice county to the allowance of the last will of Adam Knopf, deceased, and appealed to the district court from the order of allowance. The appeal was heard by Childress, J., who affirmed the order. Appellant's motion for a new trial was denied by Senn, J. From the judgment of affirmance, William Knopf appealed. Affirmed.

*Moonan & Moonan*, for appellant.

*J. W. Le Crone*, for respondent.

[1]Reported in 200 N. W. 632.

LEES, C.

Appeal from a judgment affirming an order of the probate court of Rice county admitting to probate the will of Adam Knopf, deceased, executed on October 11, 1920.

Appellant, one of 10 children who survived the testator, was practically disinherited, as was his sister Maria. By the terms of the will one-third of testator's estate went to his wife and two-thirds to eight of the children. The appellant and Maria each received a legacy of $100. The testator died in August, 1921, leaving an estate of the value of more than $60,000. One of the grounds of appellant's objections to the admission of the will to probate was that the testator was not of sound mind. The will was admitted and an appeal taken to the district court, where the appellant was again defeated, the court finding that the testator was of sound mind and denying a motion for a new trial. The question here is whether the evidence supports the finding of mental capacity.

The testator was about 83 years old when he executed the will. He had been a farmer, but had not been actively engaged in any occupation for several years. He had a cancer of the head near the left eye, which destroyed the sight of the eye and eventually caused his death. He had been married twice. Appellant, his sister Maria, and two other children, were the issue of the first marriage, and 6 children were the issue of the second. The estate consisted of a farm of 240 acres in Rice county, a house and lot in Nerstrand and 15 acres of land in Wheeling, in that county, a farm of 160 acres in Pipestone county, and a considerable quantity of personal property.

There was evidence to the effect that when married each of the children had received $500 in money or property. Appellant worked for his father until he was 28 years old. Except for one year when he was paid $15 a month, he received no wages. The record does not show how long Maria remained at home or worked for her father. A witness testified that, about 18 years before the time of the trial, the testator told him he was going to disinherit Maria because she ran away from home and married without his consent. The man she married was of good reputation and family and had

been fairly successful in life. There was some evidence of unfriendly relations between appellant and his father in recent years. The scrivener. who drew the will testified that the testator told him that he did not wish to give William anything because he and his wife had not treated him as they should and because he did not approve of his daughter-in-law's past conduct; and that he did not wish to give Maria anything because she had married against his wish.

Appellant's chief witness was the doctor who treated the testator for the cancer during the summer of 1920. He was of the opinion that the cancer had affected the brain, was the cause of continuous pain, nervousness and forgetfulness, and that on the occasions when he saw him the testator could not comprehend a business transaction or one involving the disposition of the amount of property he possessed; and added that he had a childish mind—much less mentality than a man of 21.

A lay witness, after describing the testator's actions and conversation in March, 1920, said he was feeble, not much of a business man any more, and did not possess sufficient mental capacity to do business; and another lay witness, that his talk was foolish; that he had become a changed man during the last 4 years of his life; that he drank considerable liquor every day and was in such a condition that he could not keep all his property in his mind at any one time or understand what he was doing in disposing of it.

Many witnesses testified to the testator's physical condition during the closing years of his life, to his bodily feebleness, his slowness of speech, his use of intoxicating liquor, and his sufferings from the cancer. These facts and circumstances, together with the seemingly slender foundation for his unfriendly feeling toward William and Maria, are relied on to support the contention that the court should have found that he was not of sound mind when the will was executed.

The respondent's witnesses were neighbors and acquaintances, who said they saw no particular change in testator's speech or habits of life until a very short time before his death. They agreed that he was feeble and had noticed a growth over his eye, which

they described as a wart. They said it caused him considerable discomfort, but they were of the opinion that his mind was not affected, that his memory was good and that he knew what he was doing at all times.

The will was drawn by Charles F. Ebel, then clerk of court in Rice county. A short time before, the testator asked him to draw the will and said he would come to Faribault to have it drawn. On October 11, 1920, he appeared at Mr. Ebel's office, coming there alone. ' He was brought to Faribault by one of his sons, but the son was not present when the will was drawn. The testator told Mr. Ebel about his property and how he wished to dispose of it, and gave him the names of his wife and children. The subscribing witnesses were the register of deeds and the deputy clerk of court. They testified, and so did Mr. Ebel, that the testator was then of sound mind and memory.

A more extended review of the evidence would serve no useful purpose. The outstanding features of appellant's case are the seeming injustice done to him and his sister; the lack of reasons for arbitrarily disinheriting them; the ill-health of the testator, and the opinion of his doctor as to the effect of age and disease upon his mind. The rules governing the courts of this state in determining the question of testamentary capacity are well stated in Dunnell, Minn. Dig. § 10208, and by Justice Hallam in Schleiderer v. Gergen, 129 Minn. 248, 152 N. W. 541. Applying these rules to the facts and circumstances disclosed by the evidence, we reach the conclusion that the showing of incapacity was not such as to justify interference with the determination of that issue. Clarity v. Davis, 92 Minn. 60, 99 N. W. 363; Church of St. Vincent De Paul v. Brannan, 97 Minn. 349, 107 N. W. 141; Buck v. Buck, 126 Minn. 275, 148 N. W. 117.

The judgment is affirmed.