[1] Reported in 1 N.W.2d 418.
Will contest, wherein contestant was successful in the probate court. On appeal to the district court the tables were turned, proponent prevailing. Contestant appeals from the order denying *Page 381 
an alternative motion for amended findings or a new trial. Mrs. Jennie Pihlstrom, daughter of the deceased, initiated the contest. After decision below she departed this life, and her husband, Thorwald T. Pihlstrom, as special administrator of her estate, has been substituted for her as appellant here. We shall use the word "contestant" in designating that side of the issue. The widow of the deceased, Mrs. Eugenia Johnson Bergquist, is the proponent and will be so designated.
The questions before us go only to the sufficiency of the evidence to sustain the findings, which affirm testamentary capacity and negative undue influence. Both findings are affirmed.
1. The deceased died June 21, 1939, in his seventy-fourth year. He and proponent were married February 7, 1939. Contestant was his daughter by an earlier marriage.
The record is voluminous, the briefs relatively and most inexcusably more so. Nothing can be gained by detailed statement of the evidence. The case presents nothing new to require special consideration. It is throughout the conventional case of a disinherited daughter attacking generous provision made for a widow who had taken her mother's place as the spouse of her father.
Mr. Bergquist must have been a somewhat unusual character until the "stroke" — of which more later — which disabled him physically May 22, 1939. Until then he had been in full possession of all his faculties, physical and mental. They were those of a man of strong and vigorous physique. His estate, which is said to aggregate over $20,000, is the accumulation of a man who had spent most of his adult active life as a motorman for the Minneapolis Street Railway Company.
Whether his "stroke" was the result of cerebral hemorrhage or thrombosis is an issue concerning which the doctors disagree. For proponent, there is evidence that it was a thrombosis with effect on mentality much less than that to be expected from a hemorrhage.
The proposed will was executed June 10, 1939. There had been an earlier one of June 1. In substance the two are identical. *Page 382 
The first was more informal, so much so that it was thought there should be a second and more formal document. The resulting will of June 10 was drawn by Mr. Peterson, no close acquaintance of the deceased but a gentleman in whom the community seems to have had much confidence for something like 40 years. He had for that period been a justice of the peace and, in addition, was town clerk, member of the school board, and "deacon of our church." His testimony, corroborated, reflects much care on his part to see that Mr. Bergquist knew just what he was doing and why and that the scriviner should understand what was wanted so as faithfully to express it in the will.
At this point it is significant that the testator did not propose to give his daughter, the contestant, anything, because she had already received what he considered her share. There is evidence that she had received at least $3,000 from her father, and possibly much more.
There is no suggestion that anybody put into the mind of the testator the idea of the bequest of his new Chrysler automobile to the grandson. It is not inferable that testator got from any source, extraneous to self-formulated intention, the idea of the bequest to a nephew of a diamond ring and diamond necktie pin. Except for a bequest to contestant of five dollars, the residue was given to proponent, who was also designated as "executor."
As late as May 28, testator seemed to have a lively appreciation of details of his affairs. He was then conducting with a neighbor negotiations for some filling of the yard in his home. He wanted earth hauled onto it and desired to have the price quoted. He was intending to "spread it himself." Another acquaintance who interviewed him during the time when the wills must have been under consideration was asked, "Was he the type of man that could be easily influenced?" The answer was, "No, I don't think anybody could do anything with him if he don't want [to] himself, he was not that character."
The evidence for contestant on the question of capacity, standing alone, might have justified a decision for contestant. But, as *Page 383 
ordinarily happens, it does not stand alone and is opposed by so much testimony justifying inference of capacity as to make it highly improper for us to disturb the decision below on that point. In all of its aspects this is a case where opportunity to observe witnesses and their demeanor on the witness stand, under direct and cross-examination, is a very important ingredient of consideration and ability properly to weigh evidence. That opportunity the trial judge had. It is denied us. It would be presumption for us to say that he was wrong.
On the question of undue influence, the posture of the case is the same. For contestant, argument is that testator, during the determinative period, was surrounded and influenced by a "will-making clique" consisting of his wife, her friends and relatives. Maybe so, but the decision below is the other way, and on sufficient evidence.
It may well be that testator was estranged from contestant, his daughter. That, in and of itself, may explain the will, but without more it does not even tend to invalidate it. At that point is the added significant circumstance that the daughter had already enjoyed substantial financial aid from testator.
Upon contestant was the burden to prove undue influence. In re Estate of Olson, 176 Minn. 360, 365, 223 N.W. 677. The record does not enable us to say as matter of law that she succeeded. The issues were of fact, as in Church of St. Vincent De Paul v. Brannan, 97 Minn. 349, 107 N.W. 141. There is no occasion for restatement of law or review of cases. In the latter much that is said is simply to justify affirmance on the issue of capacity or undue influence as one of fact. See In re Estate of Jernberg, 153 Minn. 458, 190 N.W. 990, where, as here, the probate court disallowed, and the district court on appeal allowed, a will.
2. The record is voluminous, and for that no one is to be criticized. But the briefs are so relatively huge as to defy excuse. On each side nearly 100 pages of supposed "brief" are used before "argument" is reached. The main fault lies in extensive *Page 384 
and repetitious quotation of testimony, page upon page of it. Counsel have simply refused to exercise the ability, which we know they have, to condense and summarize. They have ignored the fact that brevity is not only the "soul of wit" but also of dialectic force. Borrowing again, but from the language of science rather than literature, concise orderliness, in statement and argument, has no superior as an effective catalyst to bring about the wanted reaction of persuasion. Nothing tends more to weaken a strong case than to befog it in redundancy.
There has been some and similar futile repetition of quotation of authority. In this respect, counsel for appellant were able to exercise more restraint than the authors of the brief for respondent. We respectfully commend to counsel a reconsideration of Rule VIII of this court [200 Minn. xxviii-xxxi]. If they will but read it, they will understand why we consider that respondent should be denied statutory costs. The only thing that enables us to resist temptation to go further and deny otherwise taxable expense of printing respondent's brief is that the fault in that respect may have been invited by similar dereliction on the part of counsel for appellant.
The order is affirmed, but respondent will be denied statutory costs.
So ordered. *Page 385